■ In the Matter of NEW YORK PUBLIC INTEREST GROUP, INC., et al., Appellants, v NEW YORK STATE DEPARTMENT OF INSURANCE, Respondent. — Appeal from a judgment of the Supreme Court at Special Term (Connor, J.), entered August 3, 1983 in Albany County, which dismissed petitioners' application, in a combined proceeding pursuant to CPLR article 78 and an action for declaratory judgment, to declare unlawful a regulation of the Department of Insurance.

As part of the no-fault auto insurance system, the Legislature directed the Superintendent of Insurance to promulgate regulations to ensure that any of an insurer's "excess profits" were returned to consumers (Insurance Law, § 677, subd 5 [all statutory references are to the Insurance Law]).* Specifically, subdivision 5 of section 677 provides in pertinent part: "In accordance with regulations prescribed by the superintendent, each insurer issuing policies which are subject to this article * * * shall establish a fair, practicable and nondiscriminatory plan for refunding or otherwise crediting to those purchasing such policies their share of the insurer's excess profit, if any, on such policies. An excess profit shall be a profit beyond such percentage rate of return on net worth attributable to such policies, as computed in accordance with the regulation required by subdivision three of section one hundred seventy-eight of this chapter, as is determined by the superintendent to be so far above a reasonable average profit as to amount to an excess profit". Pursuant to this section, the superintendent promulgated part 166 of title 11 of the Official Compilation of Codes, Rules and Regulations of the State of New York (NYCRR) after years of extensive study and consideration. The regulation referred to in subdivision 5 of section 677 as being required by subdivision 3 of section 178 is 11 NYCRR part 165.

---

* Pursuant to a complete recodification of the Insurance Law effective September 1, 1984, section numbers have been changed (L 1984, ch 367). Thus, subdivision 5 of section 677 has been recodified as section 2329 and subdivision 3 of section 178 has been recodified as subdivision (a) of section 2323. We refer to the sections as they were numbered and worded prior to the recodification and as they were referred to by the parties. No substantive changes which would affect the outcome of this case resulted from the recodification.

New York Public Interest Research Group, Inc. (NYPIRG) and certain individual motorists commenced this lawsuit as a combined CPLR article 78 proceeding and declaratory judgment action to challenge 11 NYCRR part 166. NYPIRG contends that this regulation is arbitrary and capricious and, contrary to the statutory requirement of subdivision 5 of section 677, is not consistent with 11 NYCRR part 165. Therefore, argues NYPIRG, 11 NYCRR part 166 must be struck down as unlawful. Special Term determined that the regulation was not arbitrary and capricious and dismissed the combined petition and complaint. NYPIRG appeals.

Initially, we note that a CPLR article 78 proceeding is not the proper method by which to challenge an agency's quasi-legislative acts (see *Matter of Lakeland Water Dist. v Onondaga County Water Auth.*, 24 NY2d 400, 407). We will, however, address the merits of the declaratory judgment portion of the lawsuit (see *Matter of Sherman v Frazier,* 84 AD2d 401, 405). In this regard, Special Term's determination that the regulations challenged were not arbitrary and capricious appears well founded. The record reveals that public hearings, though not required, were held and that various viewpoints were aired. The Department of Insurance spent years developing a method to implement the Legislature's intent and the regulation seems well formulated to return excess profits as the Legislature desired. Nonetheless, these facts and conclusions are not particularly relevant to resolving the issue posed under the declaratory judgment portion of the cases: whether 11 NYCRR part 166 is unlawful because it is at variance with 11 NYCRR part 165, promulgated pursuant to subdivision 3 of section 178, despite the requirement for uniformity imposed by subdivision 5 of section 677.

It is evident from our review of the regulations at issue that profit is defined in terms of net worth in 11 NYCRR part 165 and in 11 NYCRR part 166 (compare 11 NYCRR Appendix 15, pp A-3, A-5, with 11 NYCRR 166-1.4) and, thus, the regulations are consistent in this regard. It is further evident, however, that profit is computed on a per company basis under 11 NYCRR part 165 (see 11 NYCRR 165.3 [b]), whereas profit is computed using aggregate industry data under 11 NYCRR part 166 (see 11 NYCRR 166-1.2, 166-1.6). Such computations may be well advised and thoughtfully conceived (see 11 NYCRR 166-2.2, Appendix 15), but they are contrary to the dictate of subdivision 5 of section 677, which requires that profit for purposes of excess profit be computed in accordance with 11 NYCRR part 165. The fact that the formula under 11 NYCRR part 165 includes industry data (see 11 NYCRR 165.2 [e], [f], [g]; Appendix 15, p A-6)

and the formula under 11 NYCRR part 166 considers individual insurer data (see 11 NYCRR 166-2.2 [c]) does not alter the conclusion that profit is calculated in different ways using different data. This cannot be countenanced in light of the requirement for uniformity imposed by subdivision 5 of section 677.

We find no merit to respondent's contention that the discretion vested in the superintendent by 11 NYCRR 165.3 (c) to utilize an alternative method for calculating profit permits the differences found in 11 NYCRR parts 165 and 166. Pursuant to 11 NYCRR 165.3 (c), the superintendent can authorize the use of an alternative method for calculating profit when a more reliable result will thereby be produced. There is no evidence in the record to indicate that the superintendent has in fact exercised his discretion and allowed the calculation of profit in any manner but that designated in 11 NYCRR part 165. Moreover, the superintendent's discretion can be exercised only in those situations where it is necessary to reach a more reliable result than that reached by using the prescribed calculation. We simply cannot permit respondent to justify the differences in the calculations of profit found in 11 NYCRR parts 165 and 166 by relying on an unexercised authorization of discretion, which is designed to accomplish a goal unrelated to the case now before us. Accordingly, we are of the view that 11 NYCRR part 166 is contrary to the statutory directive of subdivision 5 of section 677 and must be declared unlawful. It remains for respondent to either promulgate new regulations in accordance with subdivision 5 of section 677 or convince the Legislature to amend subdivision 5 of section 677 so as to permit the regulations as promulgated.

Judgment modified, on the law, without costs, by reversing so much thereof as dismissed the complaint; 11 NYCRR part 166 is declared to be unlawful and invalid; and, as so modified, affirmed. Main, J. P., Yesawich, Jr., and Harvey, JJ., concur.

Casey and Mikoll, JJ., dissent and vote to modify in the following memorandum by Casey, J. Casey, J. (dissenting). Although the method for computing profit provided for in 11 NYCRR part 166 is not identical to that provided for in 11 NYCRR part 165, the Superintendent of Insurance could rationally construe the uniformity requirement of subdivision 5 of section 677 of the Insurance Law as prohibiting inconsistent results, rather than mandating identical formulas. Accordingly, we would modify the judgment to declare valid 11 NYCRR part 166.

First, it must be noted that while both parts 165 and 166 establish methods for computing profits, the purpose and scope

of each part differ significantly. Part 165 was promulgated pursuant to article VII-A (§ 178, subd 3) of the Insurance Law as part of a comprehensive scheme to regulate insurance rates, prohibit anticompetitive behavior by insurers, promote competition and improve the availability and reliability of insurance (Insurance Law, § 175, subd 1), a scheme which is applicable to all but a few kinds of insurance (Insurance Law, § 175, subd 2). Accordingly, part 165 establishes a method for determining and reporting profitability for each kind of property and liability insurance (11 NYCRR 165.1 [a]). In contrast, part 166 was promulgated pursuant to article XVIII (§ 677, subd 5) of the Insurance Law, New York's no-fault law, as part of a plan to ensure that any excess profits resulting from adoption of the no-fault law are returned to the consumers. Accordingly, part 166 establishes a method for determining excess profits on automobile insurance written in New York State during the 10-year period from January 1, 1974 through December 31, 1983 (11 NYCRR 166-1.0 [a]).

Subdivision 5 of section 677 of the Insurance Law provides that "[a]n excess profit shall be a profit beyond such percentage rate of return on net worth attributable to such policies, as computed in accordance with [part 165]". Part 165 establishes a method for measuring profitability on a per company basis, using a complex system which includes certain industry-wide averages (11 NYCRR 165.3 [b]). The regulation further provides, however, that: "Whenever in the judgment of the superintendent, the calculation of profit for any company in accordance with the foregoing provisions does not produce reliable results * * * or whenever it can be shown that another method of calculation for such company will produce more reliable results, the superintendent may, in his discretion, permit or require the use of such other method of calculation or prescribe any other method of calculation which will produce more reliable results" (11 NYCRR 165.3 [c]). The majority discounts the importance of this authorization of an alternate method on the basis of a purported lack of evidence in the record to indicate that the superintendent exercised his discretionary authority under 11 NYCRR 165.3 (c), but in our view the promulgation of part 166 containing a different method for calculating profit constitutes the best evidence of the superintendent's election to exercise his discretion.

Nor can it be said that a rational basis is lacking for the superintendent's exercise of discretion. As noted above, the purposes and scopes of the legislation authorizing the promulgation of parts 165 and 166 differ significantly, thereby establishing the need for further inquiry into whether the use of identical

formulas would be appropriate. The record establishes that a great deal of time and study went into the selection of a method which provides the most accurate means of determining excess profits resulting from the no-fault insurance law, and the result was the method contained in part 166. The regulation itself explains that aggregate industry data will be used, rather than individual insurer's data (as in part 165), "to minimize random fluctuations, to avoid unfair treatment of insurers with differing financial makeup, and to permit the selection of one relatively low and logically defensible excess profit point" (11 NYCRR 166-1.2 [b]). This rationale is amplified in subpart 166-2 in a provision which begins by noting that "[t]here are serious technical problems in setting an excess profit threshold which is reasonable for each individual insurer" (11 NYCRR 166-2.2 [a]).

Thus, inasmuch as the statute requires only that profit in part 166 be determined "in accordance with" part 165 (Insurance Law, § 677, subd 5), and since part 165 gives the superintendent the discretionary authority to prescribe an alternate method (11 NYCRR 165.3 [c]), and there being a rational basis in the record and the regulations for the superintendent's exercise of this authority with respect to determining excess profits under the no-fault insurance law, it cannot be said that part 166 violates the uniformity requirement of subdivision 5 of section 677 of the Insurance Law. Accordingly, the judgment should be modified to declare valid part 166.