David A. Dubow, Esq. Village Attorney, Lansing
I am writing in response to your request for an Attorney General's opinion construing certain provisions of the Village Law providing for changes in zoning regulations.
Section 7-708 of the Village Law authorizes the village board of trustees to amend, supplement, change, modify or repeal zoning regulations, restrictions and boundaries. Section 7-708 also provides a procedure by which changes to these zoning laws can be challenged.
Your letter notes that the Village of Lansing's Zoning Law provides for the designation of "Planned Development Areas" (PDA) which are districts in which a planned mix of residential uses are sanctioned. The PDAs are unlike traditional use zones in that they permit a variety of uses in a given area and a density use higher than what might otherwise be permitted under the traditional zoning requirements. In order to become designated as a PDA, the property owner must apply to the village planning board for preliminary approval. Final approval and designation as a PDA is made by the board of trustees.
Your initial concern appears to be the authority of the village to supersede the procedures governing challenges found in section 7-708. By now it is well established that villages are authorized to amend or supersede any provision of the Village Law relating to its property, affairs or government or to other matters in relation to which it is authorized to adopt local laws, notwithstanding that such provision is a general law, unless the Legislature expressly has prohibited the adoption of the proposed local law (Municipal Home Rule Law, §10[1][ii][e][3]). In a 1986 opinion, we concluded that the home rule provision for villages authorizes supersession of the provisions of the Village Law dealing with zoning and planning (Op Atty Gen No. 86-65; seeMatter of Sherman v Frazier, 84 A.D.2d 401 [2d Dept, 1982] [similar holding for towns]).
As a matter of policy, however, we do not interpret or construe local laws or regulations. The extent to which the village's PDA regulations supersede the provisions of section 7-708 and their effect in general, therefore, are beyond the scope of this opinion.
You have also raised a number of questions with regard to the procedure under section 7-708 by which the owners of land in the vicinity of a parcel of land affected by a change in zoning regulations can challenge the proposed change. That provision provides as follows:
 "In case, however, of a protest against such change signed by the owners of twenty per centum or more of the area of the land included in such proposed change, or by the owners of twenty per centum or more of the land immediately adjacent extending one hundred feet therefrom, or by the owners of twenty per centum or more of the land directly opposite thereto, extending one hundred feet from the street frontage of such opposite land, such amendment shall not become effective except by the favorable vote of two-thirds of the members of the board of trustees in villages having three members on the board of trustees and three-fourths of the members of the board of trustees in all the other villages" (Village Law, § 7-708[1]).
Your questions concerning the definition of "owners" of property for purposes of calculating the 20% figure (Question Nos. 3 and 5) were addressed in a 1981 opinion of this office (1981 Op Atty Gen [Inf] 221).
You have asked from what point the 100 feet referred to in section 7-708 is to be measured: the entire PDA, or only those areas of the proposed PDA which are not allowed, except by variance, under the current zoning classifications. Under section 7-708 the 100 feet are measured from "the land included in such proposed change". We believe this distance must be measured from the boundaries of the proposed PDA. In our view classification of property as a PDA in and of itself constitutes a change in zoning classification under section 7-708. This is made apparent by the very nature of the process of establishing a PDA. The village must act and create one, in effect changing the area's designation and allowed uses. The fact that a portion of the property may ultimately be used in a manner consistent with its prior classification does not mean that a change within the meaning of section 7-708 has not occurred.
In the situation where a municipality maintains a right of way over property owned by a private party, you have asked who, between the municipality and the fee owner, is entitled to exercise challenge rights under section 7-708. Section 7-708 refers only to "owners", it contains no more specific statement as which property interests, such as fee owner, easement owner or remainder interest owner are eligible for participation in the challenge process. The procedure for establishing special districts under article 12 of the Town Law provides a similar standard for election eligibility and allows for a helpful analogy. Section 191 of the Town Law refers only to "owners of taxable real property" and "resident owners owning taxable real property".* As in the language of section 7-708, the statute does not mention any lesser ownership interests such as easements or leaseholds. In a 1981 opinion interpreting this section, we found that section 191 authorizes the fee owners of property to vote in the election, to the exclusion of leaseholders (1981 Op Atty Gen [Inf] 89, 91). Following this precedent, and in the absence of any special or limiting language, we believe that use of the word "owner" in section 7-708 is in its normally understood sense, and would apply to the owner in fee of the property.
By similar reasoning, it would appear that land owned by a municipality would be counted when calculating the 20% figure. In calculating the total area to which the 20% figure is applied, the statute refers only to land within 100 feet, and does not distinguish between publicly and privately owned land. In the absence of any more specific, or limiting language,* the reference to land would include privately- and publicly-owned lands.
Finally, in the case of jointly-owned property within the affected area, you have asked whether both joint tenants must sign the protest in order for that parcel to be included in the 20% requirement. Joint tenants hold "per my et per tout", or by the half and the whole (Moskowitz v Marrow,251 N.Y. 380 [1929]). This means that each joint tenant is entitled to full use and enjoyment of the entire property and may act and transact business as if he or she were the sole owner (24 N Y Jur 2d, Cotenancy and Partition, § 21; Matter of Lorch, 33 N.Y.S.2d 157 [Queens Co, Surrogate Ct, 1941]). With regard to alienation or forfeiture of the property, however, the joint tenant has only the appropriate fractional interest (ibid.). Because a joint tenant has a full, undivided interest in the property, a vote for a challenge under section 7-708 would count for the entire parcel of land and not some fraction based on the number of joint tenants (see Matter of Reister v Town Board, 18 N.Y.2d 92, 95
[1966] [effect of joint tenant's vote in special district election]).
* The relevant language of the section reads as follows:
 "Except as otherwise provided in the case of a water storage and distribution district, water quality treatment district or sewage disposal district, such petition for the establishment or the extension of an improvement district shall be signed by the owners of taxable real property situate in the proposed district or extension thereof, owning in the aggregate at least one-half of the assessed valuation of all the taxable real property of the proposed district or extension thereof, as shown upon the latest completed assessment-roll of said town; provided, however, that if there be any resident owners, the petition shall include the signatures of resident owners owning taxable real property aggregating at least one-half of the assessed valuation of all the taxable real property of the proposed district or extension owned by resident owners, according to the latest completed assessment-roll" (Town Law, § 191).
* For example, eligibility for special district elections is based on ownership of taxable real property, a standard which would exclude publically-owned property.