In the Matter of HARVEY SHERMAN et al., Respondents, v CHARLES FRAZIER et al., Constituting the Two-Family Review Board of the Town of Babylon, et al., Appellants, and JOSEPH ROTH, Intervenor.

Second Department, January 29, 1982

APPEARANCES OF COUNSEL

*Joseph F. Klein, Town Attorney* (*Raymond F. Wolfram* of counsel), for appellants.

*Abrams & Herman, P.C.* (*Norman S. Abrams* of counsel), for respondents.

**OPINION OF THE COURT**

LAZER, J.

The focus of this appeal is the Town of Babylon's legislative reaction to the burgeoning problem of illegal two-family houses. At issue is a judgment (106 Misc 2d 129) which (1) annulled a determination of the town's Two-Family Review Board granting the intervenor a special permit to convert his one-family home into a two, and (2) struck down the local law which created and empowered the review board to legalize past two-family house conversions and to authorize them in the future. Prominent in our dispositive reasoning is an obscure amendment to the Municipal Home Rule Law which — with a few specified exceptions — permits towns to supersede or amend the Town Law when enacting local laws.

Unauthorized conversions of one-family homes for two-family use have become an oft-discussed subject of public concern in recent years (see Wide Appeal for "Accessory Apartments", *New York Times,* Jan. 3, 1982, § 8, p 6, col 1; Why so Many Families are Doubling Up, *U.S. News & World Report,* March 9, 1981, p 53; Make Your House a Money-Saver, *50 Plus,* March, 1981, p 76; Legal or Not, Single-Family Homes Adding Apartments, *New York Times,* June 3, 1979, § 8, p 1, col 6; 2-Family Housing Called a Necessity by Priorities Panel, *Newsday,* April 9, 1978, p 3, col 1; Illegal Rentals, a Major Problem and a

Major Part of the Solution, *Newsday,* March 27, 1978, p 6, col 1). Illegal conversions are the consequence of decreasing availability of rental housing to the young and increasingly burdensome costs of one-family house maintenance for the not-so-young whose children have departed, leaving their parents with unused house space. This case reveals how rampant is the spread of such conversions in but a single Long Island town.

Illegal two-family conversions are not, of course, unique to Babylon, and several Long Island municipalities have enacted legislation in efforts to solve or alleviate the problem (see, e.g., Building Zone Ordinance of the Town of Oyster Bay, art I, § 1; Zoning Code of the Village of Lindenhurst, § 85-66, subd E; Municipal Code of the City of Long Beach, ch 9, art 1, § 9-105.7). The Long Beach solution, which provided for almost categoric legalization of premises converted up to a particular date, ultimately was accorded legal approbation by the Court of Appeals (see *Ilasi v City of Long Beach,* 38 NY2d 383). Babylon has chosen a different and more selective response to its difficulties.

Babylon's problem is substantial. The town is largely populated by blue collar families; its average household income in 1979 was $17,050 and more than 40% of its homeowners are 50 years of age or older (see Report on Illegal Two-Family Dwellings in the Town of Babylon, Town of Babylon Department of Planning and Development, Jan. 10, 1979, pp 5, 9). The cited planning department study revealed that the 880 legal two-family homes in Babylon were accompanied by a much larger number of illegal ones, then estimated at 10 to 20% of the approximately 38,000 single-family houses in the unincorporated area of the town (*id.,* p 4). Only one of Babylon's four residential zoning districts permits two-family homes and that zone is rather limited in area. It is apparent that the Babylon Town Board was not enamored of a vast law enforcement effort against the thousands of persons involved in ownership and occupancy of illegal dwellings as a solution for its troubles. The chosen method was a scheme for selective grants of temporary permits for two-family homes.

In enacting the requisite legislation, the town board did not amend the zoning ordinance to expand the availability and legality of two-family homes as permitted uses in the residential zones. Instead, it enacted Local Law No. 9 of 1979 entitled "Special Permit Law for Temporary Two-Family Dwellings." This statute created a Two-Family Review Board to consist of seven members empowered to conduct public hearings and determine special permit applications by those who own illegally converted two-family houses or intend to undertake such conversion. The special permit authorized by the local law grants the owner the right to use his single-family dwelling as a two-family house use for a two-year period, provided there is filed with the County Clerk's office a covenant declaring that the permit terminates upon the death of the owner or the transfer of the property. Upon expiration of the permit, the owner may apply for renewal.

Under the local law, special permits are available for premises which (1) are owner occupied; (2) contain a minimum of 500 square feet of habitable space per unit; (3) have two on-site parking spaces; and (4) have a single front entrance with any additional entrances at the side or rear. In deciding whether to exercise its discretion to issue a permit, the review board is required to consider the character of the area, property values, traffic congestion, safety and welfare, overcrowding of land, unreasonable proximity to churches, schools, theaters, recreational areas and places of public assembly and reasonable development of established uses in the area. These standards may easily be recognized as traditional special exception guidelines found in many zoning ordinances.

But superimposition of Local Law No. 9 upon Babylon's existing zoning scheme creates a curious anomoly. An owner cannot obtain a building permit to construct a two-family home in a one-family zone but he can convert an existing one-family home to a two, legalize an existing illegal conversion, or if the property is vacant, build a one-family house and convert it afterwards. Recognition of the last option as having the potential for widespread abuse led the town board (during the pendency of this litigation) to adopt a seven-year moratorium upon special permit

applications for premises constructed after January 1, 1980 (see Local Laws, 1982, No. 1 of Town of Babylon).

The instant controversy results from the application of Joseph Roth for a special permit to convert his single-family home to two-family use. Although there was some opposition at the hearing on the ground that a traffic hazard would be created by cars leaving the Roth driveway and entering a three-road intersection, the review board approved the application and granted the permit. Unfortunately, it made no findings of fact.

■ In this CPLR article 78 proceeding, the petitioners (who are Roth's next door neighbors) argue that Local Law No. 9 violates section 267 of the Town Law because it delegates powers to the Two-Family Review Board instead of to the Zoning Board of Appeals and because it is not in accordance with a comprehensive plan (see Town Law, § 263). As to the determination itself, petitioners contend that the failure of the board to make findings of fact requires a remand. Babylon responds that it is not constrained by Town Law provisions because section 10 (subd 1, par [ii], cl d, subcl [3]) of the Municipal Home Rule Law has bestowed upon it the power to amend or supersede the Town Law. Special Term rejected the town's position and declared the Local Law to be invalid on the ground that article 16 of the Town Law does not authorize the creation of a two-family review board and the delegation of powers to it (see *Matter of Sherman v Frazier,* 106 Misc 2d 129, *supra*). We conclude there should be a reversal.

■ Although an article 78 proceeding is not the proper vehicle by which to review legislative action (*Matter of Lakeland Water Dist. v Onondaga County Water Auth.,* 24 NY2d 400, 407), we will treat the declaratory portion of the petition as an action for a declaratory judgment (see, e.g., *Matter of Kovarsky v Housing & Dev. Admin. of City of N.Y.,* 31 NY2d 184, 191-192) and dispose of this proceeding on its merits.

It is not clear whether the far-reaching effects of the 1976 amendment to section 10 of the Municipal Home Rule Law (see L 1976, ch 365) were comprehended at the time of the enactment. Most of the comments found in the legislative bill jacket view the legislation as affecting the power

to restructure town government. But, as this litigation indicates, the potential reach of the amendment is well beyond mere matters of structure. As it now stands, section 10 of the Municipal Home Rule Law grants local law powers to towns as follows:

"1. In addition to powers granted in the constitution, the statute of local governments or in any other law,

"(i) every local government shall have power to adopt and amend local laws not inconsistent with the provisions of the constitution or not inconsistent with any general law relating to its property, affairs or government and,

"(ii) every local government, as provided in this chapter, shall have power to adopt and amend local laws not inconsistent with the provisions of the constitution or not inconsistent with any general law, relating to the following subjects, whether or not they relate to the property, affairs or government of such local government, except to the extent that the legislature shall restrict the adoption of such a local law relating to other than the property, affairs or government of such local government:

"a. A county, city, town or village ✱ ✱ ✱

"(14) The powers granted to it in the statute of local governments ✱ ✱ ✱

"d. A town ✱ ✱ ✱

"(3) The amendment or supersession in its application to it, of any provision of the town law relating to the property, affairs or government of the town or to other matters in relation to which and to the extent to which it is authorized to adopt local laws by this section, notwithstanding that such provision is a general law, unless the legislature expressly shall have prohibited the adoption of such a local law. Unless authorized by other state statute this subparagraph shall not be deemed to authorize supersession of a state statute relating to (1) a special or improvement district or an improvement area, (2) creation or alteration of areas of taxation, (3) authorization or abolition of mandatory and permissive referendum or (4) town finances as provided in article eight of the town law; provided, however that nothing set forth herein shall preclude the transfer or assignment of functions, powers and duties from one

town officer or employee to another town officer or employee, and provided, however, further that the powers of local legislation and appropriation shall be exercised by the local legislative body."

Subdivision 6 of section 10 of the Statute of Local Governments grants towns the power "to adopt, amend and repeal zoning regulations."

Prior to 1964, only suburban towns had the power to enact local laws (see Town Law, former § 51-a) but the constitutional and legislative home rule package of 1963-1964 (see NY Const, art IX; L 1963, ch 843; see, also, L 1964, ch 205) resulted in amendment of the Constitution and enactment of the Municipal Home Rule Law and the Statute of Local Governments. Despite references to the changes as a bill of rights for local government (see *Matter of Resnick v County of Ulster,* 44 NY2d 279, 286) and claims that local powers were being increased significantly (see Memorandum of State Office for Local Governments, 1963 McKinney's Session Laws of New York, p 2100; Governor's Memorandum, NY Legis Ann, 1963, p 468), the home rule power granted to towns was constricted by the requirement that local laws enacted pursuant to the new statutes not be inconsistent with general law (see NY Const, art IX, § 2, subd [c]; Municipal Home Rule Law, § 10, subd 1, pars [i], [ii]). Town boards were thus constrained from venturing into various areas which traditionally had been forbidden (see, e.g., *Matter of Helfant v Town of Brookhaven,* 65 AD2d 623; *Zumbo v Town of Farmington,* 60 AD2d 350; *Matter of Bon-Air Estates v Building Inspector of Town of Ramapo,* 31 AD2d 502; *Friendly Hillside Motel v Town of Brunswick,* 74 Misc 2d 1001; *Matter of Trifaro v Zoning Bd. of Appeals of Town of Red Hook,* 73 Misc 2d 483; *Kim v Town of Orangetown,* 66 Misc 2d 364), and not very much could be accomplished by local law that could not have been accomplished by ordinance even prior to the home rule legislation.

Onto this comparatively placid scene came the 1976 amendment to section 10 of the Municipal Home Rule Law granting towns the power to supersede or amend — with exceptions relating to improvement districts, taxation, referendums and town finances — the provisions of the Town

Law. Since village boards of trustees had been given the power to amend and supersede the Village Law as early as 1953 in subdivision 4 of section 11 of the former Village Home Rule Law (see L 1953, ch 744), and, in a limited sense, even earlier (see Village Home Rule Law, § 11, subd . 1, par [b], as added by L 1940, ch 823), the 1976 amendment did not appear to work a radical alteration in the existing scheme of things. Indeed, the original enactment of the Municipal Home Rule Law in 1963 repealed subdivision 4 of section 11 of the Village Home Rule Law and incorporated its provisions in section 10 of the Municipal Home Rule Law. The 1976 amendment merely gave to towns (in almost identical language) that which villages had possessed since 1953.

The supersession power contained in chapter 365 of the Laws of 1976 has its constitutional foundation in article IX (§ 2, subd [b], par [3]), which declares that "the legislature * * * [s]hall have the power to confer on local governments powers not relating to their property, affairs or government * * * in addition to those otherwise granted by or pursuant to this article". This provision is similar to former section 16 of article IX, relied upon in *Snyder v Delmin Realty Corp.* (207 Misc 218) to uphold subdivision 4 of section 11 of the Village Home Rule Law. In *Rozler v Franger* (61 AD2d 46, affd 46 NY2d 760), the Municipal Home Rule Law grant of supersession powers to villages was sustained against constitutional challenge,

Although we are aware of the contrary holding in *Klebetz v Town of Ramapo* (109 Misc 2d 952), we have no doubt that the supersession power includes the power to amend or supersede the zoning provisions of the Town Law. The 1976 amendment to section 10 of the Municipal Home Rule Law permits supersession or amendment of the Town Law with relation to the "property, affairs or government of the town" and to "other matters in relation to which and to the extent to which [the town] is authorized to adopt local laws". "Property, affairs or government" are words of art with a special limited meaning to be defined by judicial gloss and not by any dictionary definition (*Adler v Deegan,* 251 NY 467). While it is proper to analyze custom and to ascertain which matters are considered State affairs and

those which are purely those of local government (see *Alder v Deegan, supra,* p 478), the lines of demarcation are not precise and definition must be on a case-by-case basis (*Baldwin v City of Buffalo,* 6 NY2d 168). Matters involving substantial State interests do not fall within the "property, affairs or government" of a locality, even if they also touch upon local concerns (*Wambat Realty Corp. v State of New York,* 41 NY2d 490; *Floyd v New York State Urban Dev. Corp.,* 33 NY2d 1). Although historically zoning has been considered a purely local concern (see *Adler v Deegan, supra,* pp 485-486, concurring opn by CARDOZO, Ch. J.), more recent cases display recognition of the regional and State-wide impact of local land use regulations (see *Kurzius, Inc. v Incorporated Vil. of Upper Brookville,* 51 NY2d 338; *Berenson v Town of New Castle,* 38 NY2d 102; *Matter of Golden v Planning Bd. of Town of Ramapo,* 30 NY2d 359, app dsmd 409 US 1003).

Whether the "property, affairs or government" provision permits supersession of zoning regulations need not be decided here because other language of the supersession statute is dispositive. With the mentioned exceptions, the Town Law may be amended or superseded "to the extent to which [the town board] is authorized to adopt local laws by this section" (Municipal Home Rule Law, § 10, subd 1, par [ii], cl d, subcl [3]). As we have seen, section 10 (subd 1, par [ii], cl a, subcl [14]) of the Municipal Home Rule Law authorizes a town to adopt local laws to exercise "[t]he powers granted to it in the statute of local governments." The Statute of Local Governments, in turn, gives towns the power to "adopt, amend and repeal zoning regulations" (see § 10, subd 6). It follows, then, that a town board is enabled to adopt zoning regulations by virtue of its Municipal Home Rule Law powers as well as those granted by the Town Law (see *Yoga Soc. of N.Y. v Incorporated Town of Monroe,* 56 AD2d 842; *Town of Clifton Park v C.P. Enterprises,* 45 AD2d 96; see, also, 1976 Opns Atty Gen [Inf Opns] 127; 1 Anderson, New York Zoning Law and Practice, § 4.03).

The legislative intent to permit towns to supersede Town Law sections relating to zoning is illustrated by a recent amendment to subdivision 1 of section 267 of the Town

Law, which altered that statute by authorizing town boards, which had previously increased the number of board of appeals members to seven, to reduce their number to five. Section 2 of the amendatory legislation (see L 1981, ch 92) provides that the amendment to section 267 of the Town Law thus enacted "shall not be deemed or construed to affect the authority of a town board to amend section two hundred sixty-seven of the town law pursuant to authority conferred in section ten of the municipal home rule law." Since the Legislature has thus told us that the number of board of appeals members can be reduced by a local law which supersedes or amends section 267 of the Town Law, it is manifest that the zoning article of the Town Law can be superseded by local law.

In view of that supersession power, petitioners' contention that the Babylon Zoning Board of Appeals is the only body that can issue special permits is meritless. In section 267 of the Town Law, the Legislature granted boards of appeals the power to issue variances, but we know that the power to grant special permits vested in a board of appeals must derive from town board delegation (see, e.g., *Brick Hill Constr. Corp. v Zoning Bd. of Appeals of Town of Somers,* 74 AD2d 810; *Matter of Carlstein v Zoning Bd. of Appeals of Town of Union,* 71 AD2d 768). Not only can a town board reserve the power to issue special permits (see *Matter of Green Point Sav. Bank v Board of Zoning Appeals of Town of Hempstead,* 281 NY 534; *Matter of Larkin Co. v Schwab,* 242 NY 330; *Suffolk Outdoor Adv. Co. v Hulse,* 56 AD2d 365, 377, mod on other grounds 43 NY2d 483, app dsmd 439 US 808), but nothing in section 267 of the Town Law itself can be read to preclude a town board from delegating special permit powers to a body it creates by ordinance. In any event, if there is an inconsistency between Local Law No. 9 and section 267 of the Town Law, it is immaterial because the Town Law has been superseded. Therefore, the delegation to the Two-Family Review Board is a valid one.

Petitioners have yet a further claim — that Local Law No. 9 is a nullity because it was not enacted in accordance with a comprehensive plan. Section 263 of the Town Law requires consideration of the peculiar

suitability of the zoning district for particular uses, with a view to encouraging the most appropriate use of land throughout the municipality. A comprehensive plan requires that a zoning amendment should not conflict with the fundamental land use policies and development plans of the community (see *Udell v Haas,* 21 NY2d 463, 473). Nevertheless, petitioners' allegation that the local law does not accord with Babylon's comprehensive plan is baseless not only because it is a bald and unsupported conclusion, but because the town board's exercise of the supersession power overrides the mandate of section 263.

Whether the requirement for a comprehensive plan implicates constitutional prohibitions such as due process and equal protection (see Haar, "In accordance with a Comprehensive Plan", 68 Harv L Rev 1154, 1172; 1 Rathkopf, The Law of Zoning and Planning, § 12.01; see, also, *Kurzius, Inc. v Incorporated Vil. of Upper Brookville,* 51 NY2d 338, 343, *supra*), may be of interest in future litigation but the instant petitioners have not addressed the constitutional issue in any of the allegations of their petition or in their brief in this court.

■ Although we thus decide that petitioners' challenge to Local Law No. 9 must fail, the review board's determination still should be annulled and the matter remanded to the board for a new determination accompanied by findings of fact. When an agency fails to delineate the findings which provided the basis for its decision, proper judicial review is impossible (*Matter of Syracuse Aggregate Corp. v Weise,* 51 NY2d 278, 283-284). Upon the remand, the board should make findings determining whether the standards contained in the local law have been met.

Accordingly, the judgment must be reversed, on the law, Local Law No. 9 declared to be valid, the determination annulled and the matter remanded to the Two-Family Review Board of the Town of Babylon to make a new determination based upon findings of fact.

DAMIANI, J. P., COHALAN and BRACKEN, JJ., concur.

In a proceeding pursuant to CPLR article 78 to (1) review a determination of the Two-Family Review Board of the Town of Babylon granting a special permit to convert a

one-family home into a two-family home and (2) declare Local Law No. 9 of the Town of Babylon to be invalid and unconstitutional, the appeal is from a judgment of the Supreme Court, Suffolk County, entered September 29, 1980 which granted the petition, and decreed that the determination and Local Law No. 9 are void.

Judgment reversed, on the law, without costs or disbursements, and petition granted to the extent of annulling the determination, and that part of the proceeding which was to declare Local Law No. 9 of the Town of Babylon invalid and unconstitutional is converted into an action for a declaratory judgment and it is declared that Local Law No. 9 is valid. The matter is remanded to the Two-Family Review Board for further proceedings consistent herewith.