**ORANGE LAKE ASSOCIATES, INC., Plaintiff–Appellant–Cross–Appellee,**

v.

**Robert J. KIRKPATRICK, Robert A. Kunkel, Richard P. Herbert, Salvatore De Crosta, Charles P. Walczak, and Thomas Fogarty, Defendants–Appellees–Cross–Appellants.**

**Nos. 1084, 1140, Dockets 93–7743, 93–7807.**

United States Court of Appeals, Second Circuit.

Argued Feb. 1, 1994.

Decided April 14, 1994.

Thomas F. Cunningham, LaGrangeville, NY, for plaintiff-appellant-cross-appellee.

Moacyr R. Calhelha, Newburgh, NY (Rider, Weiner, Frankel & Calhelha, P.C., of

counsel), for defendants-appellees-cross-appellants.

Before: FEINBERG, OAKES and KEARSE, Circuit Judges.

OAKES, Senior Circuit Judge:

Orange Lake Associates, Inc. ("OLA"), a putative real estate developer, appeals from the grant of summary judgment to the defendants Robert J. Kirkpatrick, Robert A. Kunkel, Richard P. Herbert, Salvatore De Crosta, Charles P. Walczak and Thomas Fogarty ("the defendants"), by the United States District Court for the Southern District of New York, Gerard L. Goettel, *Judge*. The defendants cross-appeal the denial of their motion for an award of attorneys' fees. We affirm both on the appeal and the cross-appeal.

## I.

### STANDARD OF REVIEW

This case comes before us on OLA's appeal from the district court's grant of summary judgment to the defendants. We review the grant of summary judgment *de novo*, accepting as true the factual allegations of OLA's complaint, *see, e.g., Square D Co. v. Niagara Frontier Tariff Bureau, Inc.*, 476 U.S. 409, 411, 106 S.Ct. 1922, 1923–24, 90 L.Ed.2d 413 (1986), and drawing inferences based upon these allegations in the light most favorable to OLA. *Scheuer v. Rhodes*, 416 U.S. 232, 235, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *IUE AFL–CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1052 (2d Cir.1993). We will affirm an award of summary judgment if the moving party can demonstrate that "there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Thus, summary judgment is warranted where the non-moving party has no evidentiary support for an essential element on which it bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

## II.

### BACKGROUND

**A.** *Events Leading to the Dispute Between OLA and the Town Board*

OLA, a New York corporation formed in May 1990, acquired the right to develop several parcels of property (totaling some 150 acres), located within the Town of Newburgh. The property is adjacent to Orange Lake, a lake sometimes used for recreational purposes. OLA's attorney, Thomas F. Cunningham, is or was the sole shareholder of OLA. He is now in bankruptcy and asserts that the shares are held by a trust. Downpayments totaling some $232,500 were made in connection with the acquisition of these development rights, but title was never closed on the contracts and OLA has forfeited all rights to develop any of the properties for failing to make payments under the respective contracts. We note that OLA also secured a right-of-way on another parcel permitting access to Route 52, a state road intersecting its property.

At the time the contracts for acquisition were first signed, the land involved was zoned "R–3" which permits twelve residential units per acre. In December 1991, after the Town Board adopted a new Master Plan in March of 1991, the Town Board re-zoned the land to "R–2" which permits two residential units per acre.

The Town of Newburgh is located in the northeastern section of Orange County, New York. During the period between 1980 and 1992, the Town grew about 10 percent from 22,747 to approximately 25,000 residents. During this time, the Town's budget grew by a greater rate, from $6,620,006 to $16,037,-045. The Town Board, established pursuant to N.Y. Town Law § 60 (McKinney 1987), and having also the powers granted by the New York Constitution and statutes pertaining to N.Y.Mun.Home Rule Law (McKinney 1969 & Supp.1994), governs the Town of Newburgh.

The defendants, who were members of the Town Board of the Town of Newburgh, New York, between 1987 and 1991, have been sued only in their individual capacities.

From 1987 through 1990 they, as members of the Town Board, considered several proposals to handle the town's rapid population growth, including expansion of municipal water and sewer services, adoption of a Master Plan, and amendments to the town's zoning ordinances.

Beginning in March 1988, the Town Board undertook a study of a proposal to increase its sewage treatment handling capacity. In August 1988, almost two years before OLA was even formed and about eight months before OLA's predecessor presented an initial application to the Town Planning Board, the Town Board heard a presentation from a planning consultant concerning his review of the existing town zoning law and of proposed revisions in connection with the preparation of a Master Plan for the town. In October 1988, the Town Board retained a planning consultant to prepare a Master Plan for the town. Perhaps OLA's biggest single objection to the defendants' conduct was that the Town Board ultimately adopted the Master Plan—OLA contending that New York law permits only the Town Planning Board to adopt such a plan.

On May 2, 1989, OLA's predecessor, a partnership, presented to the Town Planning Board the initial application for a proposed residential condominium development to be called "The Commons at Orange Lake" (the "Commons"). The proposal involved the construction of approximately 515 townhouse and condominium units on a total of approximately 100 acres.

On May 22, 1989, the members of the Town Board and the Town Planning Board held a joint public meeting. At the meeting, they discussed the Master Plan, and asked the planning consultant, first, to focus on "critical environmental areas," including property in the vicinity of Orange Lake, which included lands proposed for OLA's project. On July 19, 1989, the consultant submitted to the Town Board the first Master Plan report recommending that the town should "restrict sewer extension to control the development of the more fragile, non-sewered areas, particularly near the Chadwick Lake and Orange Lake areas."

At a July 13, 1989, meeting, the OLA predecessor partnership made a presentation of its proposal to the members of the Town Planning Board in connection with its request for "sketch plan review." The Planning Board attorney advised the sponsors that the Town of Newburgh was considering re-zoning which might affect the plans they were proposing to develop so that the developers knew that they were proceeding at a certain risk.

At a September 14, 1989, public meeting of the Town Planning Board, the Planning Board referred OLA's predecessor's application to the consultant for review. On September 18, 1989, the consultant reported that there were a number of deficiencies in OLA's predecessor's submissions made in its application; for instance, liquid effluent would have to be conveyed off-site to facilities that did not exist and the proposal was not consistent with the existing zoning ordinance which required that multiple dwellings be serviced by "town water facilities." It was not until some nine months later—on May 19, 1990—that OLA attempted to respond to these comments.

On October 20, 1989, the Town Board received the consultant's second report recommending, among other things, that the Town Board (1) designate lands bordering Orange Lake as a critical environmental area, (2) eliminate R–3 districts in the Rock Cut Road area, i.e, the area of the Commons and another proposed development, and, at the expense of the developers, (3) expand infrastructure to include the proposed subdivision, the Commons, but only at "R–2" densities (two units per acre). By letter dated June 20, 1990, the Town Board declared its intention to serve as the "lead agency" for the purpose of conducting an environmental review of the proposed Master Plan for the town of Newburgh pursuant to New York's State Environmental Quality Review Act ("SEQRA"). N.Y.Envtl.Conserv.Law §§ 8–0101, et seq., (McKinney 1984 & Supp.1994). The letter advised interested agencies, including the Town Planning Board and the New York State Department of Environmental Conservation (DEC), to serve notice of any objections to the Town Board's resolu-

tion declaring itself lead agency. No objections were received from any of the interested agencies.

In July 1990, after receiving OLA's comments, the Town Planning Board undertook the required SEQRA review of OLA's proposal. In September 1990, the Town Planning Board held a "scoping session" with OLA to establish the scope of the environmental submissions that would be necessary. On December 3, 1990, the Town Board held a public hearing on the proposed Master Plan. Numerous comments were made including some by OLA's counsel.

Meanwhile, on December 28, 1990, the DEC wrote a letter commenting that at least five DEC permits would be required for OLA's Commons project, alerting the sponsors to "our potential concerns regarding the project impacts on fresh water wetlands, surface waters (including Orange Lake), and surrounding properties," and suggesting that a pre-application conference be arranged.

In June 1991, OLA submitted a draft environmental impact statement (EIS) for its Commons project. In August 1991, the Town Planning Board's planning consultant and engineer issued separate reports noting numerous deficiencies in the draft EIS. On August 16, 1991, the Town Planning Board unanimously voted to reject OLA's draft EIS as incomplete. Meanwhile, in March 1991, the Town Board adopted, by unanimous vote, the Master Plan prepared by its consultant. In May 1991, the Town Board began environmental review on proposed zoning law amendments and referred the proposed amendments to the Town Planning Board and the Orange County Planning Department for their respective review and comments.

In November 1991, just prior to the Town Board's vote on the amendments to the town's zoning ordinances, OLA's attorney delivered to the individual defendants copies of a draft pleading he had prepared, including many of the allegations set forth in the second amended complaint. In December 1991, the Town Board adopted the amendments to the zoning ordinances which reduced maximum densities for a number of properties within the town, including the proposed site for the Commons. The day following the adoption of the zoning amendments, OLA commenced suit against the defendants in their individual capacities in the New York State Supreme Court, Dutchess County, seeking damages including $255,000 in acquisition costs, $66,333 in professional fees, and $13 million in lost profits. The defendants removed the case to federal court based upon the federal claims raised by OLA, and there OLA sought damages including $5.9 million in lost profits and $10 million in punitive damages.

## B. *The Lower Court Opinion*

In federal court, after cross-motions to disqualify counsel were denied, a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) was denied, and after affidavits and memoranda were filed, the defendants' motion for summary judgment was granted. The court held that the defendants were entitled to absolute immunity for actions taken in their legislative capacity as members of the Town Board. *Orange Lake Assocs., Inc. v. Kirkpatrick,* 825 F.Supp. 1169, 1173–74 (S.D.N.Y. 1993) (citing *Dusanenko v. Maloney,* 560 F.Supp. 822, 827 (S.D.N.Y.1983) (individual defendants, as local legislators, were absolutely immune from suit), *aff'd on other grounds,* 726 F.2d 82 (2d Cir.1984) (per curiam) and *Goldberg v. Town of Rocky Hill,* 973 F.2d 70, 72–73 (2d Cir.1992) ("legislators are accorded absolute immunity from suits for damages under § 1983")).

In its decision, the court specifically dealt with OLA's contention that the Town Board members were not acting within their legislative capacity when they adopted the Master Plan or when they amended the zoning laws. *Orange Lake,* 825 F.Supp. at 1174 (citing *Wilmorite, Inc. v. Eagan Real Estate, Inc.,* 454 F.Supp. 1124, 1132 (N.D.N.Y.1977), *aff'd,* 578 F.2d 1372 (2d Cir.), *cert. denied,* 439 U.S. 983, 99 S.Ct. 573, 58 L.Ed.2d 655 (1978) and *Cutting v. Muzzey,* 724 F.2d 259, 261 (1st Cir.1984)). The court recognized that, in considering amendments to zoning ordinances, town boards ordinarily act in a legislative capacity. They do not do so, however, if the actions taken "impact on particular individuals rather than on a community," or

"the factors considered in adopting the legislation relate to specific individuals, instead of general policy implications." *Id.* The court concluded that the defendants were acting within their legislative capacity in adopting the Master Plan because the actions taken did not target specific individuals: "[n]ot merely Plaintiff's parcel but almost the entire area surrounding Orange Lake, as well as several other tracts of land throughout the Town, were affected by the new master plan." *Id.* Furthermore, the factors considered in adopting the legislation involved legitimate policy concerns: The planning consultant identified the area of the project as "critical environmental area" and suggested lower densities on the basis of local pollution levels and the "capacity of the town to deliver water and sewer facilities." *Id.*

The court rejected OLA's contention that, in preparing and adopting a Master Plan, the Town Board had acted outside its authority because such tasks are within the exclusive power of the Town Planning Board. The court found that under section 271(1) of New York Town Law as it stood at the time, the Town Board could appoint a Planning Board; however, if the Town Board chose not to appoint a Planning Board, it retained full and exclusive power to prepare and change a Master Plan. *Id.* at 1175. The court then considered section 272-a of New York Town Law, under which the Town Planning Board may prepare and change a comprehensive Master Plan, and section 275 of New York Town Law which gives the Town Planning Board "full power and authority" in connection with planning matters. Recognizing the policy considerations underlying the reason for having planning boards in the first place—namely, preventing short-term political considerations from interfering with long-term community planning—the district court nevertheless held that the Town Planning Board's power was not exclusive in connection with the adoption of a Master Plan so as to retain legislative immunity for the members of the board. In any event, the district court noted that there was no indication that the re-zoning undertaken by the Town Board was so arbitrary as to give rise to a violation of the guarantee of due process in the Fourteenth Amendment. *Id.* at 1176 n. 5.

The court then considered OLA's argument that delays by the defendants, including Town Supervisor Kirkpatrick's alleged threat to delay the project in 1987, and certain other acts,[1] violated the due process clause of the Fourteenth Amendment. The court noted that unreasonable delays in approving projects have been considered appropriate grounds for injunctive relief. *Pokoik v. Silsdorf,* 40 N.Y.2d 769, 773, 358 N.E.2d 874, 876–77, 390 N.Y.S.2d 49, 51–52 (1976) (village's improper delay in reviewing application for building permit warranted injunctive relief granting the permit notwithstanding intervening passage of an amended ordinance precluding the issuance of the permit sought); *Huntington Ready–Mix Concrete, Inc. v. Town of Southampton,* 112 A.D.2d 161, 162, 491 N.Y.S.2d 383, 384–85 (2d Dept. 1985) (same; permit to excavate gravel). The court continued by explaining that summary judgment was inappropriate on the basis of causation because there was an issue of fact as to causation. Nevertheless, the court held that OLA could not make out a due process claim because it did not have a vested property interest in its development application. *Orange Lake,* 825 F.Supp. at 1178 (citing *Dean Tarry Corp. v. Friedlander,* 826 F.2d 210, 212 (2d Cir.1987) ("[T]he question of whether an applicant has a legitimate claim of entitlement to the issuance of a license or certificate should depend on whether, absent the alleged denial of due process, there is either a certainty or a very strong likelihood that the application would have been granted. Otherwise the application would amount to a mere unilateral expectancy not rising to the level of a property right guaranteed against deprivation by the Fourteenth Amendment.") (internal quotations and citation omitted); *Yale Auto Parts, Inc. v. Johnson,* 758 F.2d 54, 59 (2d Cir.1985) (requiring "certainty or a very strong likelihood" of issuance of application before entitlement becomes property interest); and

---

1. We note that some of the alleged delays were acts by the Town Planning Board and not by these defendants.

*RRI Realty Corp. v. Incorporated Village of Southampton,* 870 F.2d 911, 918 (2d Cir.), *cert. denied,* 493 U.S. 893, 110 S.Ct. 240, 107 L.Ed.2d 191 (1989)). Because the Town Planning Board had discretionary approval powers, the district court held that OLA did not have a vested property right and, hence, could not make out either a substantive or procedural due process claim. *See Azizi v. Thornburgh,* 908 F.2d 1130, 1134 (2d Cir. 1990) (plaintiffs had no right to immigrant visa; therefore, they did "not have the requisite property interest necessary to prevail on their due process challenge"). The court went on to say that there could be no procedural due process violation because there was a hearing available under Article 78 of New York Civil Practice Law & Rules. *See Orange Lake,* 825 F.Supp. at 1179 (citing *Voelckers v. Guelli,* 58 N.Y.2d 170, 176–77, 446 N.E.2d 764, 767–68, 460 N.Y.S.2d 8, 11–12 (1983)). This, the court wrote, was true even though this was a suit for damages and damages cannot be awarded as the sole relief in an Article 78 proceeding because OLA could have sued in state court for injunctive relief before it lost the ability to continue with the project. The court concluded that OLA had a reasonable time in which to seek state relief; therefore, OLA may not make a legitimate claim of a due process violation on the ground that such a claim is no longer available. *Orange Lake,* 825 F.Supp. at 1179 (citing *Giglio v. Dunn,* 732 F.2d 1133, 1135 n. 1 (2d Cir.), *cert. denied,* 469 U.S. 932, 105 S.Ct. 328, 83 L.Ed.2d 265 (1984)).

Finally, the court rejected OLA's argument that the Town Board's actions violated the Equal Protection Clause of the Fourteenth Amendment on the basis of racial discrimination because OLA's Commons project offered "affordable housing," and that the demise of the development was on the basis of racial discrimination. The court found this claim "inflammatory and without merit," pointing out that the reduction of the amount of land zoned for multi-family housing in the few areas of the town is not the "stark" pattern considered necessary to find a violation by *Arlington Heights v. Metro. Hous. Dev. Corp.,* 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977) (*"Arlington Heights I"*). In particular, the court noted that eight of the nine areas zoned for R–3 development in the town remained entirely or substantially intact following the re-zoning and the re-zoning reduced densities for almost all of the property around Orange Lake, most of which was not originally designated for R–3 densities. Thus, the motion for summary judgment was granted with respect to this claim. No attorneys' fees were imposed, however, on the ground that the "plaintiff had a legitimate complaint about defendants' questionable conduct."

## III.

## DISCUSSION

The district court did an able job in dealing with the difficult arguments in this case. We would be tempted to affirm on the basis of Judge Goettel's opinion were it not for the fact that on appeal the parties have made somewhat more sophisticated arguments than were made to him. We deal below with these more sophisticated arguments.

### A. *Immunity*

OLA argues that although legislators generally are absolutely immune from suits such as this one, in this case, the defendants are not entitled to legislative immunity.

First, OLA argues that the *Town Planning Board* has exclusive authority to adopt a town plan. Brief for Appellant at 6–7 (citing N.Y.Town Law §§ 275, 272–a (McKinney 1987)). In contrast, OLA argues, the *Town Board* only has authority to pass a zoning ordinance. *Id.* at 6 (citing N.Y.Town law § 261 (McKinney 1987)). Thus, according to OLA, there is a sharp distinction between the administrative powers of the Town Planning Board and the legislative powers of the Town Board. Also, according to OLA, no court has specifically addressed the question whether, where the Town Board has not appointed a Planning Board, the Town Board has authority to adopt a Master Plan. *Id.* at 6–7, 14.

OLA next argues that the preparation and adoption of a Master Plan does not come within the purview of activities for which Town Board members are entitled to legisla-

tive immunity because the preparation and adoption of a Master Plan is not a legislative activity. Brief for Appellant at 7–11. And, even if the adoption of the Master Plan is a legislative act, it was not an activity within the Town Board's authority. Therefore, the members of the Town Board may not dissemble behind the legislative immunity defense. Brief for Appellant at 11–24. OLA argues that N.Y.Town Law § 272–a, which provides for the preparation and adoption of a Master Plan, has been amended to replace the phrase "Master Plan" with the phrase "Town Comprehensive Plan," which a Town Board may adopt by local law or ordinance. OLA suggests that this bit of legislative history affirms that preparation of Master Plans is the exclusive province of the Town Planning Board, and that only under the amended statute may the Town exercise the planning function traditionally exercised by the Town Planning Board. *Id.* at 16–24. Finally, OLA argues that district court's denial of its motion to amend its complaint to add the Town of Newburgh as a defendant constitutes reversible error because the defense of legislative immunity is unavailable to the Town. Brief for Appellant at 24–27.

Defendants, on the other hand, argue, as apparently they did not before the district court, that under N.Y.Mun.Home Rule Law § 10(1)(d)(3) (McKinney 1969 & Supp.1993), the Town Board, in adopting the Master Plan, properly overrode N.Y.Town Law § 272–a.

In support of their propositions, both parties cite *Kamhi v. Town of Yorktown,* 74 N.Y.2d 423, 432–33, 547 N.E.2d 346, 350–52, 548 N.Y.S.2d 144, 148–49, *aff'd,* 74 N.Y.2d 423, 547 N.E.2d 346, 548 N.Y.S.2d 144 (1989); *Weinstein Enters., Inc. v. Town of Kent,* 135 A.D.2d 625, 522 N.Y.S.2d 204, 205 (2d Dept. 1987), *appeal denied,* 72 N.Y.2d 801, 526 N.E.2d 44, 530 N.Y.S.2d 553 (1988); *Torsoe Bros. Constr. Corp. v. Architecture and Community Appearance Bd. of Review,* 120 A.D.2d 738, 739, 502 N.Y.S.2d 787, 788 (2d Dept.1986); and *Sherman v. Frazier,* 84

A.D.2d 401, 446 N.Y.S.2d 372, 377–78 (2d Dept.1982).

Judge, now Chief Judge, Judith Kaye, who wrote the majority opinion in *Kamhi v. Town of Yorktown,* gave us a comprehensive overview of the law of New York pertaining to this case. Although *Kamhi* did not involve the question precisely raised here but, rather, the validity of a local law conditioning site plan approval for a multi-family residential development on the provision of park land or its money equivalent, much of what Judge Kaye's opinion says is applicable.

The court commences by pointing out that, "[i]n general, towns have only the lawmaking powers the Legislature confers on them.... Without legislative grant, an attempt to exercise such authority is ultra vires and void." *Kamhi,* 74 N.Y.2d at 427, 547 N.E.2d at 347, 548 N.Y.S.2d at 145. The court first found that nothing in the provisions of N.Y. Town Law Art. 16 (McKinney 1987 & Supp.1994), the enabling legislation in the Town Law for local lawmaking in the area of zoning and planning,[2] empowered the town to enact the law at issue.

The court then considered whether the grant of authority to the town under N.Y.Mun.Home Rule Law § 10 gave the town the power it sought. The court points out that Article IX of the State Constitution declares that "[e]ffective local self-government and intergovernmental cooperation are purposes of the people of this State, and it directs the Legislature to provide for the creation and organization of local governments so as to secure the rights, powers, privileges and immunities granted by the Constitution." *Kamhi,* 74 N.Y.2d at 428, 547 N.E.2d at 348, 548 N.Y.S.2d at 146 (citing N.Y. Const. art. IX, § 1). The court also points out that, in 1964, a home rule package was adopted comprising Article IX of the State Constitution, as well as the N.Y.Mun. Home Rule Law, and the Statute of Local Governments. *Id.* (citing N.Y. Con.Laws Mun.Home Rule—Statute of Local Governments (McKinney 1969 & Supp.1994)). Both the Municipal Home Rule Law and the Stat-

---

**2.** Town Law 274–a, at issue in *Kamhi,* involving planning board approval of site plans in certain uses, sets forth the elements a town planning board may require for site plan approval, and does not authorize a demand of park land or its money equivalent.

ute of Local Governments must be "liberally construed." *Id.* (citing N.Y.Mun.Home Rule Law § 51, Stat.Local Gov'ts § 20(5) (McKinney 1969 & Supp.1994)). Thus, these statutes furnish a two-part model for home rule consisting of "limitations on State intrusion into matters of local concern and affirmative grants of power to local governments." *Kamhi,* 74 N.Y.2d at 428–29, 547 N.E.2d at 348, 548 N.Y.S.2d at 146.

Specifically, "[t]he Municipal Home Rule Law affirmatively grants authority to towns—'[i]n addition to powers granted in the [constitution,] the statute of local governments, or in any other law'—to adopt local laws relating to their 'property, affairs or government,' provided that such legislation is not inconsistent with the constitution or any general law." *Id.* (citing N.Y. Const. art. IX, § 2(c)(i); N.Y.Mun.Home Rule Law § 10(1)(i)). Home Rule Law § 10 "further authorizes towns to adopt local laws in 14 enumerated instances, so long as those enactments are not inconsistent with general law or prohibited by State law." *Id.* (citing N.Y. Const. art. IX, § 2(c)(ii)(1); N.Y.Mun.Home Rule Law § 10(1)(i)).

The court went on to find that there was an inconsistency between the local law there at issue and Town Law § 274–a which defines planning board powers in connection with site plan approval. Moreover, it determined that neither N.Y. Municipal Home Rule Law section 10(1)(i) nor section 10(1)(ii) authorized the inconsistency.

Nevertheless, the court considered that even though local laws inconsistent with state laws are generally invalid, a limited exception exists for local laws that fall within N.Y.Mun. Home Rule Law § 10(1)(ii)(d)(3), the so-called supersession authority. *Kamhi,* 74 N.Y.2d at 429, 547 N.E.2d at 349, 548 N.Y.S.2d at 147. That section, added in 1976, provides that a town may amend or supersede, in its local application, "any provision of the town law relating to the property, affairs or government of the town or to other matters in relation to which and to the extent to which it is authorized to adopt local laws by this section, notwithstanding that such provision is a general law, unless the legislature expressly shall have prohibited the adoption of such a local law." N.Y.Mun. Home Rule Law § 10(1)(ii)(d)(3). The statute specifies those matters as to which supersession is not authorized; but those restrictions were inapplicable in *Kamhi* and are inapplicable in our case. Thus, "[w]hen municipalities act within their supersession authority, even local laws that are inconsistent with the Town Law may be valid. Indeed, inconsistency is a premise of the supersession authority, for there is otherwise little need of the power to amend or supersede State law." *Kamhi,* 74 N.Y.2d at 430, 547 N.E.2d at 349, 548 N.Y.S.2d at 147.

Thus, the court went on to hold, "the Legislature has recognized that situations may arise where laws of State-wide application are appropriately tailored by municipalities to fit their own peculiarly local needs." *Id.* The court added: "Municipal Home Rule Law § 10(1)(ii)(a)(12) vests towns with the police power to enact laws relating to the 'government, protection, order, conduct, safety, health and well-being of persons or property therein.' Although this provision is not a delegation of the entire police power of the State and is limited to matters of an inherently local nature, it affords a basis for local 'land use controls to meet the increasing encroachments of urbanization on the quality of life.'" *Kamhi,* 74 N.Y.2d at 433, 547 N.E.2d at 351, 548 N.Y.S.2d at 149. Also added was that "Municipal Home Rule Law § 10(1)(ii)(a)(14) ... permits a town to adopt local laws to exercise '[t]he powers granted to it in the statute of local governments.'" *Id.* And, finally, that "[t]he Statute of Local Governments § 10(6) in turn gives towns the power to 'adopt, amend and repeal zoning regulations.'" *Id.* Significantly for us, the court then said, "[t]his provision also affords a limited field for local lawmaking in the area of planning and zoning." *Id.* & n. 3 (citing *Sherman,* 84 A.D.2d 401, 409, 446 N.Y.S.2d 372; *Weinstein Enters.,* 135 A.D.2d at 626, 522 N.Y.S.2d 204).

The first question we have, of course, bearing in mind this general overview, that is, the fact that this is in the area of town zoning and planning, is whether the Town Board, a legislative body, could supersede section 272–a of the Town Law pertaining to

Master Plans. The answer must be unequivocally in the affirmative. *Weinstein Enterprises v. Town of Kent*, 135 A.D.2d at 626, 522 N.Y.S.2d at 205, cited in *Kamhi*, held that the Town Board could supersede a N.Y.Town Law § 263 requirement that zoning ordinances be made in accordance with the Comprehensive Plan; *Torsoe Bros. Constr. Corp.*, 120 A.D.2d 738, 739, 502 N.Y.S.2d at 788, held that the Town Board can supersede N.Y.Town Law § 274–a, involving the grant of authority to the planning board, and delegate that authority to another board; and *Sherman*, also cited in *Kamhi*, held that a Town Board can supersede Town Law § 267, involving the grant of authority to the zoning board of appeals to issue permits or variances. In *Sherman*, the Second Department wrote, "[i]n section 267 of the Town Law, the Legislature granted boards of appeals the power to issue variances, but we know that the power to grant special permits vested in a board of appeals must derive from town board delegation.... [N]othing in section 267 of the Town Law itself can be read to preclude a town board from delegating special permit powers to a body it creates by ordinance." *Sherman*, 84 A.D.2d at 410, 446 N.Y.S.2d at 377–78 (citations omitted). So, too, as Judge Goettel pointed out, the Town Board created the Town Planning Board, and there is no reason that the Town Board may not take back its power to prepare and change a comprehensive Master Plan for the development of the entire area of the town under § 272–a. After all, under § 271 of the Town Law, the Town Board chooses whether to appoint the Town Planning Board in the first instance. Accordingly, when the Newburgh Town Board adopted the Master Plan, it did nothing that in any way could be considered unlawful or outside its legislative authority. Therefore, the legislative immunity which extends to members of Town Boards within New York State, *Goldberg v. Town of Rocky Hill*, 973 F.2d at 72; *see also Wilmorite*, 454 F.Supp. at 1132, extends to the defendants in this instance insofar as their adoption of the Master Plan and zoning law amendments is concerned.

### B. *Due Process*

To the extent that OLA reiterates due process arguments on this appeal that it made below, we agree with the lower court's analysis which we laid out in section I of this opinion. *See also Gagliardi v. Village of Pawling*, 18 F.3d 188, 191–93 (2d Cir.1994).

 In particular, the district court was correct in finding that OLA had ample procedural notice and a full opportunity to be heard in connection with the development of the Master Plan and the enactment of zoning ordinances which implemented that plan. More importantly, we agree that OLA had no vested right to approval of its plans for the project. Much of the delay attributed by OLA was actually its own; first, in submitting its application and, later, in responding to the consultant's legitimate inquiries concerning the plans filed. No effort was made by OLA to seek available judicial review by way of an Article 78 or declaratory judgment action. *See Torsoe Bros. Constr. Corp.*, 120 A.D.2d at 739, 502 N.Y.S.2d at 788 (holding that although an Article 78 proceeding is not the proper vehicle to challenge the constitutionality of town legislative enactments, the court would treat the portion of the petition which sought a declaration that a town law was unconstitutional as a declaratory judgment action and thereby dispose of the proceedings on the merits); *see also Kamhi v. Town of Yorktown*, 141 A.D.2d 607, 529 N.Y.S.2d 528 (1988) (applying same procedure), *aff'd*, 74 N.Y.2d at 427, 547 N.E.2d at 346, 548 N.Y.S.2d at 145 (N.Y. Court of Appeals approving procedure). OLA did not exhaust the available remedies and there is nothing to indicate that any of the claimed procedural defects affected OLA's rights or the ultimate decisions of the Town Board or Planning Board in any way. We agree with the defendants that indeed OLA abandoned its project before the Town Planning Board would have been in a position to render any final decision on its project proposal.

 Insofar as OLA claims that re-zoning to reduce the density of residential development constituted an impermissible "taking" without compensation, we agree with Judge Goettel that as an applicant for subdivision and site plan approval, OLA had no cognizable vested interest in the existing zoning of

its property. *Dean Tarry*, 826 F.2d at 213 (wide discretion in planning board to reject site plan on the basis of the planning board's assessment of the plan's effect on public health, safety and general welfare prevented expectation of success from rising to the level of a property right meriting protection under the Fifth and Fourteenth Amendments). *See also RRI Realty*, 870 F.2d at 919 (where Village officials have wide discretion to deny housing application, there can be no certainty or very strong likelihood that Village officials, absent alleged due process violation, would have approved the permit; therefore, the applicant did not have an entitlement sufficient to invoke the protection of the due process clause); *Ellentuck v. Klein*, 570 F.2d 414, 429 (2d Cir.1978) ("Under New York law ... a landowner has no vested interest in the existing classification of his property."). Nor is OLA aided by *Lucas v. South Carolina Coastal Council*, —— U.S. ——, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992). There the Court explicitly stated that "it seems to us that the property owner necessarily expects the uses of his property to be restricted, from time to time, by various measures newly enacted by the State." —— U.S. at ——, 112 S.Ct. at 2899. And as we pointed out in *Southview Assocs., Ltd. v. Bongartz*, 980 F.2d 84, 95 (2d Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1586, 123 L.Ed.2d 153 (1993), a substantive due process claim is not ripe for review absent the rendering of a final decision by the governmental entity, and also requires the plaintiff to have sought compensation if the state provides a "reasonable, certain and adequate provision for obtaining compensation." (quoting *Williamson County Regional Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 194, 105 S.Ct. 3108, 3120, 87 L.Ed.2d 126 (1985)).

■ OLA's substantive due process and taking claims fail both these tests. There is nothing to indicate that the zoning ordinance in question here bears anything other than a rational relationship to a legitimate government objective. *Village of Belle Terre v. Boraas*, 416 U.S. 1, 8, 94 S.Ct. 1536, 1540, 39 L.Ed.2d 797 (1974); *Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 395, 47 S.Ct. 114, 121, 71 L.Ed. 303 (1926) (a property owner can challenge the constitutionality of a zoning restriction if it is "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare"); *Greene v. Town of Blooming Grove*, 879 F.2d 1061, 1063–64 (2d Cir. 1989). The limitation of future development around Orange Lake, an environmentally critical area according to the town's planning consultants, is a perfectly legitimate goal.

## C. *Equal Protection*

OLA argues that the actions taken on behalf of the Town Board constitute "a concerted plan and conspiracy to deprive *inter alia* minority people of their equal protection rights and Fair Housing Act rights." Brief for Appellant at 45 (citing Complaint, ¶¶ 15, 142, and 147). The members of the Town Board argue that OLA mischaracterizes their actions with accusations that are conclusory, and that do not create a genuine issue of material fact. Brief for Appellee at 43–49.

Specifically, OLA argues that the zoning amendment in question has a disparate impact on minorities and asks us to apply strict scrutiny accordingly. In this case, the law is a facially neutral amendment to a pre-existing zoning law. Furthermore, OLA does not allege that the Town Board or its members have applied this facially neutral amendment in a discriminatory fashion. Therefore, OLA must be challenging the law on the grounds that it constitutes a device designed to classify individuals as a means to serve an impermissible end. *See, e.g.*, Ronald D. Rotunda & John E. Nowak, *Treatise on Constitutional Law*, 2d ed., § 18.4 (1982).

Along these lines, OLA alleges that the amendment to the zoning law imposes a barrier to minorities who are economically disadvantaged. By down-zoning the land in question from R–3, the highest zoning still considered to constitute zoning for affordable housing, to R–2, a zoning category not classified for affordable housing, the law imposes a barrier on individuals who are economically disadvantaged. These individuals, OLA argues, are predominantly minorities. Therefore, according to OLA, the law really classifies individuals on the basis of race and should be struck down because the law is not

**1226**

narrowly tailored to serve a compelling state interest.

■ OLA's argument is not persuasive and falls short of establishing that the zoning amendment should be subjected to strict scrutiny for a number of reasons. To establish that an even-handedly applied, facially neutral law should be subjected to the strict scrutiny of a court, the challenger normally must show that (1) the law has such a disproportionate impact on one of several groups (i.e., race, national origin, alienage, gender or illegitimacy) that we may view the law as if it created such a classification on its face, and (2) a discriminatory purpose motivated the actions of the government officials.

■ As the Supreme Court wrote: official action will not be held unconstitutional solely because it results in a racially disproportionate impact. "Disproportionate impact is not irrelevant, but it is not the sole touchstone of an invidious racial discrimination." ... Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause.

*Arlington Heights I,* 429 U.S. at 264–65, 97 S.Ct. at 563 (quoting *Washington v. Davis,* 426 U.S. 229, 242, 96 S.Ct. 2040, 2048–49, 48 L.Ed.2d 597 (1976)). In short, the test for determining whether to apply strict scrutiny to a facially-neutral, even-handedly applied law is not solely a test for determining disparate impact and not solely a test of legislative motive. Although we will not permit "another branch of government to subvert the equal protection guarantee," Rotunda & Nowak, *Treatise on Constitutional Law, supra,* § 18.4, at 50, we also will not sit as a super-legislature by declaring void democratically enacted laws on the tenuous basis that a few people might be adversely affected by the law. *See United States v. Yonkers Bd. of Educ.,* 624 F.Supp. 1276, 1292 (S.D.N.Y.1985) ("[a]n action which merely has the unintended *effect* of creating or maintaining racial segregation [does not] violate[ ] ... the Constitution"), *aff'd,* 837 F.2d 1181 (2d Cir.1987), *cert. denied,* 486 U.S. 1055, 108 S.Ct. 2821, 100 L.Ed.2d 922 (1988). In short, we will not strike down an even-handedly applied, facially neutral law as violative of the Equal Pro-

tection Clause unless the plaintiff can demonstrate discriminatory intent or purpose.

"Determining whether invidious discriminatory purpose was a motivating factor demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." *Arlington Heights I,* 429 U.S. at 266, 97 S.Ct. at 563. Thus, a stark pattern of disparate impact might suffice to show intent. *See, e.g., Gomillion v. Lightfoot,* 364 U.S. 339, 341, 81 S.Ct. 125, 127, 5 L.Ed.2d 110 (1960); *Yick Wo v. Hopkins,* 118 U.S. 356, 374, 6 S.Ct. 1064, 1073, 30 L.Ed. 220 (1886). Absent such a pattern, we look to other evidence, such as the legislative history of the act, for some clues about legislative motivation.

■ Even upon taking the evidence in the light most favorable to OLA, OLA fails to demonstrate either discriminatory impact or purpose. OLA alleges that Orange Lake is a five-minute drive from a city that has a minority population of greater than 50 percent, "that there has been a substantial loss in affordable housing in the Town of Newburgh over the last 12 years," and "that a substantial portion of the Commons was to be devoted to affordable housing." Brief for Appellant at 45–46 (citing Complaint). OLA provides no evidentiary support for other allegations, such as, "the Defendants never really studied the need for affordable housing," and that the Master Plan further exacerbates the growing shortage of affordable housing. *See Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552 (summary judgment warranted where the non-moving party has no evidentiary support for an essential element on which it bears the burden of proof). OLA puts forward no proof that its proposal, which included the construction of condominium homes which would begin at a price of $109,000, would really constitute affordable housing for economically disadvantaged minorities. Furthermore, OLA's allegations are not supported by the evidence thus before the court: In particular, "eight of the nine areas zoned for 'R3' development in the Town remain entirely or substantially intact following the new zoning," and "the new zoning reduced densities for almost all of the property

around Orange Lake, most of it not originally designated for 'R3' densities." *Orange Lake,* 825 F.Supp. at 1180. Most important, OLA makes only conclusory allegations that the members of the Town Board were motivated by racial animus and fails to point to any evidence of such motivation.

■ In short, OLA fails to make a *prima facie* case that this zoning amendment should be subject to strict scrutiny. We therefore review the law as a classification in the area of economics and social welfare. *See Cleburne v. Cleburne Living Ctr., Inc.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985). To establish a claim for intentional discrimination under this classification, OLA must allege that similarly situated individuals have been treated differently, *Gagliardi,* 18 F.3d at 193–94 (citing *Cleburne,* 473 U.S. at 439, 105 S.Ct. at 3254; *Yale Auto Parts,* 758 F.2d at 61), and that the different treatment is not "'rationally related to a legitimate state interest,'" *see, e.g., Pennell v. City of San Jose,* 485 U.S. 1, 14, 108 S.Ct. 849, 858, 99 L.Ed.2d 1 (1988) (citing *City of New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 2516, 49 L.Ed.2d 511 (1976)); *Cleburne,* 473 U.S. at 440, 105 S.Ct. at 3254; *Vance v. Bradley,* 440 U.S. 93, 97, 99 S.Ct. 939, 942–43, 59 L.Ed.2d 171 (1979) ("we will not overturn [a statute that does not burden a suspect class or a fundamental interest] unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the legislature's actions were irrational").

■ In this case, OLA failed to come forward with evidence sufficient to create a genuine issue as to whether the Town Board re-zoned the area out of legitimate environmental concerns. As we stated in the due process section of this opinion, the limitation of future development around Orange Lake, an environmentally critical area according to the town's planning consultants, is a perfectly legitimate goal. Furthermore, the re-zoning of the land in question occurred as part of a comprehensive Master Plan. In fact, the properties proposed for the Commons project comprise approximately 100 acres of over 6,000 acres of residentially zoned land

throughout the Town where maximum permitted zoning densities were reduced by the zoning amendments.

We therefore hold that the zoning amendments do not violate the Equal Protection Clause.

**D. *Fair Housing Act Claim***

Congress enacted the Fair Housing Act, 42 U.S.C. §§ 3601 *et seq.,* (1988) ("FHA") as Title VIII of the Civil Rights Act of 1968. OLA argues that the defendants violated the FHA for the same reasons that they violated the Equal Protection Clause. We now hold that the defendants did not violate the FHA. We review the law because the constitutional and statutory standards for discrimination in housing differ.

■ Under the FHA, "it shall be unlawful [t]o ... make unavailable ... a dwelling to any person because of race [or] color." 42 U.S.C. § 3604(a). This Circuit originally declined to apply Title VII–type analysis to FHA cases. *See Boyd v. The Lefrak Org.,* 509 F.2d 1110, 1114 (2d Cir.) (citing *Griggs v. Duke Power Co.,* 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971)), *cert. denied,* 423 U.S. 896, 96 S.Ct. 197, 46 L.Ed.2d 129 (1975). Since then, we have imported Title VII's burden-shifting analysis into Title VIII cases. *Huntington Branch, NAACP v. Town of Huntington,* 844 F.2d 926, 934 (2d Cir.), *review declined in part and judgment aff'd,* 488 U.S. 15, 109 S.Ct. 276, 102 L.Ed.2d 180 (1988); *Robinson v. 12 Lofts Realty, Inc.,* 610 F.2d 1032, 1036–39 (2d Cir.1979) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Arlington Heights I,* 429 U.S. at 264–65, 97 S.Ct. at 562–63; *Washington v. Davis,* 426 U.S. at 242, 96 S.Ct. at 2048). Thus, in contrast to housing practices that may be held unconstitutional, "[h]ousing practices unlawful under Title VIII include not only those motivated by a racially discriminatory purpose, but also those that disproportionately affect minorities." *United States v. Starrett City Assocs.,* 840 F.2d 1096, 1100 (2d Cir.) (citing *Robinson,* 610 F.2d at 1036–37), *cert. denied,* 488 U.S. 946, 109 S.Ct. 376, 102 L.Ed.2d 365 (1988). Therefore, in making

out a *prima facie* housing discrimination case, OLA need not show discriminatory intent. *Huntington Branch, NAACP,* 844 F.2d at 934.

 As we explained above, other than casting out purely conclusory accusations of racial discrimination, OLA is unable to show discriminatory effect in violation of the FHA. To show discriminatory effect, OLA must allege an "adverse impact on a particular minority group," or "harm to the community generally by the perpetuation of segregation." *Huntington Branch, NAACP,* 844 F.2d at 937 (citing *Metropolitan Housing Dev. Corp. v. Village of Arlington Heights,* 558 F.2d 1283, 1290 (7th Cir.1977) (*"Arlington Heights II "*), *cert. denied,* 434 U.S. 1025, 98 S.Ct. 752, 54 L.Ed.2d 772 (1978)). OLA makes no allegation concerning community harm, or an adverse impact on a particular minority group, although it does allege discriminatory intent: "the intent of the Defendants in proposing the Master Plan was to generally make affordable housing uneconomical in the Town and specifically to spot zone The Commons out of existence because other continuing or proposed new R–3 zones are either already developed or subject to severe development limitations." Second Amended Complaint at ¶ 75, *Orange Lake Assocs. v. Kirkpatrick,* No. 92–0183 (S.D.N.Y. July 16, 1992) (*reprinted in* Joint Appendix at 42). It provides no evidentiary support for its conclusion that its proposal to construct condominium homes, which would begin at a price of $109,000, would really constitute affordable housing for economically disadvantaged minorities other than its allegation that only R–3 zoned districts would be *eligible* for "affordable housing." *See Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552.

In short, the district court properly granted summary judgment on the basis of the substantive law. Therefore, we need not reach the question whether the court erred in denying OLA's motion to amend its complaint to add the Town of Newburgh because summary judgment in favor of the Town also would have been proper.

## IV.

## CONCLUSION

We have considered the other contentions of OLA, as well as the defendants' cross-appeal for sanctions, and find them lacking in merit.

Judgment affirmed.