Argued January 23, reversed and remanded December 26, 1978

EASTGATE THEATRE, INC. et al, *Appellants,*
*v.*
BOARD OF COUNTY COMMISSIONERS OF
WASHINGTON COUNTY, *Respondents,*
and
MICKELS et al, *Intervenors-Respondents.*
(No. 36-379, CA 7303)
588 P2d 640

John L. Schwabe and Donald Joe Willis, Portland, argued the cause for appellants. With them on the briefs were Ridgway K. Foley, Jr., and Souther, Spaulding, Kinsey, Williamson & Schwabe, Portland.

Lawrence R. Derr, County Counsel, Hillsboro, argued the cause and filed the brief for respondents.

No appearance for intervenors-respondents.

Before Schwab, Chief Judge, and Tanzer and Gillette, Judges.

TANZER, J.

## TANZER, J.

Petitioner in this writ of review proceeding appeals from an order of the trial court affirming the action of the Board of County Commissioners (Board) which denied petitioner's request for a change in the comprehensive plan map. Due to circumstances described below, the Board's denial of petitioner's application was accomplished without issuance of an order, findings or conclusions. We reverse and remand to the Board for entry of a proper order.

A succession of conflicting and superceding land-use controls has frustrated several attempts by petitioner to develop a 26-acre parcel of land which he purchased in 1971. After two unsuccessful attempts to develop a drive-in theater on the site, petitioner submitted a proposal for an industrial park warehouse complex to the Planning Commission staff in November, 1974. The parcel was zoned for industrial use but the applicable plan of development[1] (POD #17) designated it by color-coded map for medium-density residential use. Neither the zoning nor the POD #17 map have been changed since 1974.

While the design review on petitioner's proposal was still pending, the Supreme Court decided *Baker v. City of Milwaukie,* 271 Or 500, 533 P2d 772 (1975), holding that a comprehensive plan must take precedence over zoning ordinances allowing a more intensive use. Based on its interpretation of that decision, the county planning department suspended review of petitioner's development proposal until the conflict between the zoning ordinance and the plan of development could be resolved.

---

[1] As we understand the Washington County planning scheme, the term "comprehensive plan" includes two components. First, there is the Comprehensive Framework Plan which contains numerous policies to guide development and a map with four broad land-use classifications. Also, there are more specific plans of development (POD's) consisting primarily of color-coded maps designating allowable land uses for various parts of the county in relatively specific terms.

Petitioner applied for a change in the POD #17 plan map in August, 1975. The Planning Commission staff recommended allowing the change; the Planning Commission recommended denial. The county commissioners considered the matter at a hearing in January, 1976. Petitioner presented evidence that the parcel is unsuited for residential development because it is bounded on three sides by incompatible uses and that industrial use would conform to the Comprehensive Framework Plan and the zoning ordinance. Several residents of the vicinity opposed the plan map change.

Two of the five county commissioners disqualified themselves because of previous involvement with the matter in different capacities. One felt that he could not be impartial because he had been chairman of a community planning organization which had studied and unanimously recommended approval of the proposed plan change.[2] The other disqualified himself because he was a director of the Metropolitan Service District which had expressed an interest in acquiring the parcel as a site for a solid waste milling-transfer station.[3]

---

[2] Commissioner Shepherd stated at the Board hearing:

"* * * Because I am vitally concerned about some of the basic issues involved in this plan change, I have determined that according to the Fasano criteria, I am not qualified to take part in this hearing. Since I am concerned, it's been a difficult decision to remove myself from the active role. To me, after removing all the side issues, the basic land use that best suits this area is obvious. I am afraid I would become an advocate for that use rather than a judicial officer. * * * I also adamantly expressed my views at the Aloha Cooper Mountain CPO meeting and those views have not changed so I'd appreciate you calling me from the next item."

[3] At the hearing on the writ of review, Washington County counsel acknowledged that Commissioner Miller disqualified himself because [the multi-service district] was intimately involved:

"* * * Commissioner Miller continued to participate in the hearing for a period of time but at one point expressed concern that he might not be able to participate in the decision and as the matter focused more and more closely upon [the multi-service district] involvement with the site, Commissioner Miller finally felt he had to abstain. * * *."

The remaining three commissioners voted 2 to 1 in favor of the proposed changed. This vote did not result in an amendment of POD #17, however, because the Washington County charter requires an affirmative vote by three commissioners for any action.[4] Consequently, the existing conflict between the zoning and the plan map was unresolved by the vote.

The Board denied a petition for rehearing, and petitioner instituted this writ of review proceeding pursuant to ORS 34.010 to 34.100. The trial court considered the Board's vote to be no action at all and confined its review to the question of whether the Board followed the applicable procedure. Finding no procedural error, it affirmed the Board.

## The Board's Action

Our initial task is to determine the effect of the Board's 2 to 1 vote in favor of petitioners' application.[5]

■ Petitioners applied for a change they were entitled to apply for, the commission completed its action on the application and petitioners did not obtain the change they applied for. The commission's action is therefore effectively a denial of petitioners' application and must be deemed such for purposes of review. To do otherwise and to accept respondent's characterization of the Board's action as no action, would be to place petitioners in a perpetual procedural limbo in which their rights would never be resolved.

Under ORS 34.040, we review the denial for error of law or procedure. Among the purported errors particularized in the petition of the writ are two which we need consider for the resolution of the appeal: the

---

[4]Washington County Charter, § 33(b), provides:

"Attendance of three of five commissioners shall be necessary to transact business. Approval of at least three commissioners in attendance is required for any action."

[5]Petitioner advances several reasons for us to hold that his request was actually approved, but we cannot ignore the plain meaning of the charter provision which requires an affirmative vote by three commissioners. *State ex rel Roberts v. Gruber,* 231 Or 494, 498-500, 373 P2d 657 (1962).

denial by 1 to 2 vote and the failure to support the denial with findings and conclusions.

## Reasoned Order

■■ It is well established that commission action on an application for a plan change is quasi-judicial in nature, *Fasano v. Washington Co. Comm.,* 264 Or 574, 588, 507 P2d 23 (1973), and that the determination of the governmental body must be by a reasoned order based upon supported findings, *Sunnyside Neighborhood v. Clackamas Co. Comm.,* 280 Or 3, 20, 569 P2d 1063 (1977). Although orders denying land-use changes are often less extensive than orders allowing change, they must nevertheless have an explicit factual and rational basis, *Marracci v. City of Scappoose,* 26 Or App 131, 135, 552 P2d 552 *rev den* (1976); *Dickinson v. Bd. of County Comm.,* 21 Or App 98, 102, 533 P2d 1395 (1975); *Wes Linn Land Co. v. Bd. of County Comm'rs,* 36 Or App 39, 583 P2d 1159 (1978); *cf., Commonwealth Properties v. Washington County,* 35 Or App 387, 582 P2d 1384 (1978). The rule seems no less applicable here where the plan and the zone differ and petitioners have offered extensive evidence that the plan should be harmonized with the zone. Accordingly, the absence of a proper order invalidates the Board action in this case and it must be remanded for entry of such an order.

## Impartial Tribunal

The Board argues that if we deem the action to be a denial, and we do, remand for entry of a proper order would be futile because the lone commissioner who opposed the change would have no authority to promulgate an order. We are not persuaded, however, that the Board's action on remand will necessarily be the same because the refusals to vote appear to have been based upon a misinterpretation of law by the two abstaining commissioners which, after this opinion, may not be repeated.

[ 750 ]

Two commissioners abstained for the sole apparent reason that they believed themselves to be required as a matter of law to disqualify themselves by the statement in *Fasano* that the parties to a quasi-judicial land-use hearing

> "* * * are entitled to * * * a tribunal which is impartial in the matter—i.e., having no prehearing or ex parte contacts concerning the question at issue * * *." 264 Or at 588.

Their error of law results from having read the statement too literally.

The *Fasano* analogy between land-use hearings and court hearings is not complete; commissioners need not conduct themselves in all respects as judges or the proceedings in all respects as trials. The Supreme Court characterized particular land-use proceedings as "quasi-judicial," which means they have many, but not all, of the attributes of actual judicial proceedings. In this developmental period of land-use procedure, it is difficult for any county commissioner to determine which attributes of judicial procedure apply to land-use adjudications by virtue of *Fasano* and which do not. Therefore, we shall review some of the differences between judicial and quasi-judicial land-use proceedings in order to identify the nature of practical differences which should be accommodated by procedure. Then we shall demonstrate that the interests for which the commissioners disqualified themselves in this case are not of a nature or magnitude for which *Fasano* requires disqualification.

The most obvious difference between judicial and most quasi-judicial proceedings is that the consequences of disqualification are greater in the latter. In judicial proceedings as in football, when a judge steps out, he can be replaced from the bench and the adjudication can be made; before a municipal governing body, as in rugby, however, there can be no substitution and the administrative adjudication may go unmade. Nonparticipation by a commissioner is therefore a drastic step.

[ 751 ]

Another difference becomes particularly problematical where a minimum number of limited votes is required for decision. Here, the absolute charter requirement of 3 concurring votes out of 5 gives to the action of each commissioner a significance which does not exist where the law requires only the concurrence of a majority of those who vote. By nonparticipation, a commissioner reduces the pool from which the requisite number of votes can be drawn. The Supreme Court in *State ex rel Roberts v. Gruber,* 231 Or 494, 498-99, 373 P2d 657 (1962), recognized that an abstention in such a case may have the same effect as a nay vote:

> "[Where the law requires] '* * * the *affirmative action of a majority of the entire board* or *a majority of the members present,* a refusal to vote may result in defeating the proposition because in such case *affirmative* action is required, and those who refuse to vote cannot be counted on the affirmative side under such a specific statutory requirement, and the proposal before the council may be defeated by lack of the affirmative majority required by the statute.' 2 Dillon, Municipal Corporations (5th ed) 854, §527." (Supreme Court emphasis.)

In reality, then, there can be no abstention in the sense of refraining from contributing to the result where a minimum vote is required for action because an abstention and a nay vote have exactly the same effect on the result.[6]

Another gap in the analogy arises from the nature of the office. A judge is expected to be detached, independent and nonpolitical. A county commissioner, on the other hand, is expected to be intensely involved in the affairs of the community. He is elected because of his political predisposition, not despite it, and he is expected to act with awareness of the needs of all elements of the county, including all government agencies charged with doing the business of the

---

[6] Whether there are circumstances in which a member of a legislative body may be judicially compelled to participate by voting is a question we need not and do not reach.

people. This difference is manifested in the statutory code of ethics embodied in ORS ch 244. Particularly, ORS 244.120(1) provides that a county commissioner must handle a conflict by declaration, but, in contrast, a judge must do so by either withdrawal or declaration:

"(1) When involved in a potential conflict of interest, a public official shall:

"(a) If he is an elected public official, other than a member of the Legislative Assembly, or an appointed public official serving on a board of commission, announce publicly the nature of the potential conflict prior to taking any official action thereon.

"* * * * *

"(c) If he is a judge, remove himself from the case giving rise to the conflict or advise the parties of the nature of the conflict."[7]

It is clear for all these reasons that if the system is to work, impartiality must be defined and procedurally accommodated differently in quasi-judicial proceedings than in judicial proceedings.

The next question is whether the commissioners' interests in this case require withdrawal for disqualification under *Fasano.* In *Tierney v. Duris, Pay Less Properties,* 21 Or App 613, 627-29, 536 P2d 435 (1975), we applied the "impartial tribunal" requirement of *Fasano* as more hortatory than literal. Accordingly, we upheld an order invalidating an order where two city councilmen had discussed with some local residents their attitudes toward a land development proposal and had declared the contacts.

The *Tierney v. Duris* approach is equally apt here. Both abstaining commissioners felt legally compelled by *Fasano* to abstain due to conflict of interest because of their involvement with other governmental bodies which were interested in the use to which petitioners' property was put. Neither situation posed the kind of

---

[7] *See also* Code of Judicial Conduct Canons 1, 2, 3, 5 and 7 (1970), which require withdrawal.

partiality which the Supreme Court intended in *Fasano* to prohibit. Indeed, abstention in this case, although it flowed from an abundance of good faith, was a corruption of the goal of *Fasano.*

The goal of the *Fasano* procedures is that land-use decisions should be made fairly. The abstention in this case did not prevent partiality; instead, it prevented the decision itself. *Fasano* cannot be applied so literally that the decision-making system is aborted because an official charged with the public duty of adjudication fears that his motivation might possibly be suspect. The court stated in *Fasano* that "[p]arties at the hearing before the county governing body are entitled * * * to a tribunal which is impartial," 264 Or at 588, but the commissioners' refusal to vote here effectively denied the petitioners their entitlement to any tribunal at all; if there is no tribunal, partiality and impartiality become irrelevant.

Moreover, official involvement in related governmental organizations and activities is not the sort of interest the *Fasano* procedures are designed to bar from influencing official action. The *Fasano* procedures are intended to counteract, as the Supreme Court said, "the dangers of the almost irresistible pressures that can be asserted by private economic interests on local government." 264 Or at 588. The commissioners here did not withdraw to insulate the decision from private economic interests, but only because of their official involvement in community planning and related governmental activities. Thus, the conflicts which the commissioners declared as the basis for their refusal to vote are not of the kind which *Fasano* was intended to guard against.

■ Therefore, consistent with both *Fasano* and *Tierney,* we conclude that the refusal by two commissioners to vote was solely the result of a misinterpretation

of law, *i.e.,* a misinterpretation of the quasi-judicial procedural requirements mandated in *Fasano.*[8]

Reversed and remanded.

---

[8] We are aware that the composition of the Board varies from time to time and that the commissioners who voted before may not be the same commissioners who vote on remand. Nevertheless, it is better to dispose of the case on the law rather than upon the hope that, after sufficient litigational delay, different commissioners may act differently.