CHARLES AMES, ET AL.

V.

TOWN OF PAINTER, ET AL.

Record No. 890380

March 2, 1990

Present: All the Justices

*(James S. Ellenson*, on brief, for appellants.)
*Jon C. Poulson (Drummond, Bloxom & Poulson*, on brief), for appellees.
*Amici Curiae*: Anthony Herman & Laura L. Sardo; Steven J. Rosenbaum; Covington & Burling, on brief, representing Anabel Perez and Carlos Gomez Ayala, for appellants.

JUSTICE RUSSELL delivered the opinion of the Court.

This is an appeal from an order reversing the grant of a special use permit by a board of zoning appeals.

Charles B. Ames and his wife, Jean, farmed approximately 190 acres in Accomack and Northampton Counties, raising primarily cucumbers and potatoes, relatively labor-intensive crops. Before 1988, they had relied mainly upon local labor, which they often found to be unavailable when needed during the harvest season. Because other agricultural operations in the area had been more successful when using migrant labor, the Ameses intended to employ migrant workers on contract during the 1988 and subsequent seasons.

The Ameses owned a 52-acre tract on U.S. Route 13, in Accomack County, adjacent to the southern boundary of the Town of Painter, four-tenths of a mile from the center of town. The tract contained an old, frame, two-story, six-room tenant house which had been occupied by six migrant workers and their children during the 1987 growing season. The Ameses developed a plan for the conversion of the tenant house into a migrant labor camp to accommodate 20 occupants, and, in March 1988, applied to the Board of Zoning Appeals of Accomack County (the Board) for a special use permit.

The Ameses' land was zoned "Agricultural District A." The Accomack County Zoning Ordinance did not permit the requested use in that district as a matter of right, but provided, in § 3-2-15, that such a use could be authorized by a special use permit granted by the Board. The language appearing on the application for a special use permit required that the application be signed by the owners of all lands within 500 feet of the boundary lines of the affected property, indicating their approval or disapproval of the requested use. Fourteen neighboring owners signed the application, four expressing approval and ten expressing disapproval. In addition, 226 citizens living in the immediate area filed a petition stating their "strong opposition" to the proposal.

The Board conducted a hearing on May 26, 1988, at which the Ameses and a number of other witnesses testified. At the conclusion of the hearing, a member of the Board, citing the requirements of the zoning ordinance, moved that the application be denied. The member stated his view that the proposed use would not be harmonious with the community and that it would have a harmful effect upon the property rights and values of neighboring owners. The motion failed for lack of a second. Another member then made the following motion:

> Mr. Chairman, I realize that this is a situation which everyone has talked about this morning, this labor has to be and also it is an effect on the community, and I am somewhat familiar with what goes on in labor camps, and it is true, the larger the labor camp, the more problems you have. This is unfortunately, is near a residential area. I am willing to make a motion if it can be accepted to permit a camp there of at least ten people. Six last year and no one even knew they lived in the community, and if this gentleman can get by with ten I would make this recommendation or a motion that we approve it for ten people to be housed there.

That motion carried by a vote of four to one. Except for those two motions, there was no discussion or debate among the board members. The Board expressed no findings or conclusions. A special use permit was issued for a migrant-labor camp, limited to 10-person occupancy.

The Town of Painter, its mayor and vice-mayor, and the 226 objecting petitioners, brought the case to the circuit court by peti-

tion for certiorari. The court heard the matter *ore tenus* on December 19, 1988, reviewing the record made before the Board and hearing the testimony of Mr. Ames and other witnesses. At the conclusion of the hearing, the court ruled that the Board had failed to follow the guidelines of the zoning ordinance, reversed the Board, and dismissed the Ameses' application. We granted the Ameses an appeal.

Pursuant to enabling legislation, Accomack County has adopted a zoning ordinance which delegates authority to the Board to grant special use permits under certain conditions prescribed by the ordinance. Section 10-2-5 provides, in pertinent part:

> Before issuance of a Special Use Permit the Board of Zoning Appeals shall consider the general character of the surrounding neighborhood in order to facilitate the preservation and creation of an attractive and harmonious community. The Board of Zoning Appeals shall also consider the environmental effect on scenic, historic and waterfront areas including the property rights and values of adjoining and nearby property owners.

On appeal, the Ameses contend that the trial court failed to accord the Board's decision the presumption of correctness to which it is entitled, and impermissibly substituted the court's judgment for that of the Board. The Town argues that the Board's decision could not be sustained because it failed to comport with the standards prescribed by the zoning ordinance.

In *County Board of Arlington* v. *Bratic*, 237 Va. 221, 377 S.E.2d 368 (1989), we recently restated the principles of law governing the standards of judicial review which govern use-permit cases, which are the same as those governing judicial review of zoning enactments. *Id.* at 226-27, 377 S.E.2d at 370-71. A board of zoning appeals, acting under a delegated power to grant or refuse special exceptions and special use permits, acts in a legislative capacity. *Id.* at 227, 377 S.E.2d at 371. Therefore, its action is presumed to be reasonable. The presumption is rebuttable, but it stands until surmounted by evidence of unreasonableness. *Id.* The litigant attacking the legislative act has the burden of producing probative evidence of unreasonableness. If he produces such probative evidence, the legislative act cannot be sustained unless

the governing body (or in cases of this kind, the Board of Zoning Appeals) meets the challenge with some evidence of reasonableness. *Id.* The governing body is not required to go forward with evidence sufficient to persuade the fact-finder of reasonableness by a preponderance of the evidence. It must only produce evidence sufficient to make the question "fairly debatable," for the legislative act to be sustained. *Fairfax County* v. *Southland Corp.*, 224 Va. 514, 522-23, 297 S.E.2d 718, 722 (1982); *see also Bratic*, 237 Va. at 227, 377 S.E.2d at 371. "An issue may be said to be fairly debatable when, measured by both quantitative and qualitative tests, the evidence offered in support of the opposing views would lead objective and reasonable persons to reach different conclusions." *Bratic*, at 227, 377 S.E.2d at 371 (quoting *Loudoun Co.* v. *Lerner*, 221 Va. 30, 34, 267 S.E.2d 100, 102 (1980) (citation omitted)).

■ In a different but analogous context, we have consistently held that a board of zoning appeals, exercising its administrative functions in considering a zoning variance, must make certain findings of fact required by statute. If it does not do so, "the parties cannot properly litigate, the circuit court cannot properly adjudicate, and this Court cannot properly review the issues on appeal." *Packer* v. *Hornsby*, 221 Va. 117, 121, 267 S.E.2d 140, 142 (1980). Those prerequisite findings are, in variance cases, crucial to the exercise of the power of judicial review which the General Assembly has vested in the courts.

■ Although no findings of fact are required by statute when a board of zoning appeals acts in a legislative capacity to consider a special use permit, the observations we made in *Packer* v. *Hornsby* are instructive nonetheless. Code § 15.1-497 vests in the circuit court a power of judicial review of "any decision of the board of zoning appeals" by writ of certiorari. The issuance of such a writ on petition of "any person or persons jointly or severally aggrieved," *id.*, is not discretionary, but is a matter of right. *Bd. Sup. of Fairfax County* v. *Bd. Zoning Appeals*, 225 Va. 235, 238, 302 S.E.2d 19, 21 (1983). Whether the board of zoning appeals has exercised an administrative function in considering a variance, or a legislative function in considering an application for a special use permit, it is equally essential to the exercise of judicial review that a sufficient record be made to enable the reviewing court to make an objective determination whether the issue is "fairly debatable."

Judicial review of legislative acts must be approached with particular circumspection because of the principle of separation of powers, embedded in the Constitution. That principle precludes judicial inquiry into the motives of legislative bodies elected by the people. *Telephone Company* v. *Newport News*, 196 Va. 627, 639, 85 S.E.2d 345, 352 (1955). Where the courts are called upon to review the acts of officials, agencies, and boards exercising delegated legislative powers, the inquiry must ordinarily be whether the official, agency, or board has acted arbitrarily or capriciously, or rather, whether it has acted in accordance with the policies and standards specified in the legislative delegation of power. That inquiry becomes necessary because delegations of legislative power are valid only if they establish specific policies and fix definite standards to guide the official, agency, or board in the exercise of the power. Delegations of legislative power which lack such policies and standards are unconstitutional and void. *Chapel* v. *Commonwealth*, 197 Va. 406, 414, 89 S.E.2d 337, 342 (1955); *Assaid* v. *Roanoke*, 179 Va. 47, 51, 18 S.E.2d 287, 288 (1942); *Thompson* v. *Smith*, 155 Va. 367, 379, 154 S.E. 579, 584 (1930).

The Accomack County Zoning Ordinance avoids that difficulty because it contains standards for the guidance of the Board in the exercise of its delegated legislative power to consider an application for a special use permit. Those standards are contained in the two sentences of § 10-2-5 quoted above. It is, therefore, essential to the exercise of the circuit court's statutory duty of judicial review, that the record be such as to enable the court to determine whether the Board adhered to those standards.

The record made before the Board consisted of the statements of Mr. and Mrs. Ames, the applicants, which related entirely to their need for migrant labor, the testimony of witnesses opposing the application, and the arguments of counsel. The witnesses opposing the application expressed concern relating to adverse environmental effects, increased criminal activity, particularly drug distribution which was being experienced in nearby migrant labor camps, and adverse effects upon property values.

The supplemental record made before the circuit court was similar. Several witnesses testified to the anticipated harm the proposed special use would cause to the Town, the neighboring properties, and the residents of the affected area. The only testimony in support of the application was given by Mr. Ames, whose statements again related primarily to his need for migrant labor.

As a result, the record is devoid of any evidence to support a finding that the proposed special use would "facilitate the preservation and creation of an attractive and harmonious community," as required by § 10-2-5. The record is similarly devoid of any evidence to support a finding that "the environmental effect on scenic, historic and waterfront areas including the property rights and values of adjoining and nearby property owners," *id.*, would be anything other than harmful.

How may the power of judicial review be exercised where the record is silent with respect to the Board's adherence to a legislatively-prescribed standard? The zoning ordinance merely requires that the Board, in making its decision, take into consideration the attractiveness and character of the surrounding neighborhood, the harmony of the proposed use with the neighborhood, the environmental effects of the proposed use, and any effect upon "property rights and values of adjoining and nearby property owners." Some or all of the members of the Board, in reaching their individual decisions, may have considered those factors in good faith, but with the exception of the statements of the member who moved a *denial* of the application on those grounds, there is no basis in the record for an objective conclusion by the reviewing court that the legislative standards had been given any consideration.

We hold that the "fairly debatable" standard cannot be established by a silent record. Unless the Board makes appropriate findings, supported by the record, or states appropriate conclusions supported by the record, or unless the record itself, taken as a whole, suffices to render the issue fairly debatable, probative evidence of unreasonableness adduced by a litigant attacking the Board's action will be deemed unrefuted. Because that was the situation here, the judgment will be

*Affirmed.*

JUSTICE WHITING, dissenting.

In my opinion "the record itself, taken as a whole, suffices to render the issue fairly debatable."

The evidence before the board establishes that during the prior year, there were six migrant workers housed in the subject building, plus a "man and his wife and three or four children." Upon

questioning by the board's chairman and counsel for the Ameses, every witness agreed that such occupancy did not affect the surrounding community in any of the ways that they feared.

At the end of the hearing, the member who moved to deny the 20-worker application read certain provisions of the ordinance, which required the board to consider the general character of the neighborhood and the effect of the 20-worker home upon the environment and property values of adjoining property owners. When his motion failed for lack of a second, another member said:

> I realize that this is a situation which everyone has talked about this morning, this labor has to be and also it is (sic) an effect on the community, and I am somewhat familiar with what goes on in labor camps, and it is true, the larger the labor camp, the more problems you have. This is unfortunately, is near a residential area. I am willing to make a motion if it can be accepted to permit a camp there of at least (sic) ten people. Six last year and no one even knew they lived in the community, and if this gentleman can get by with ten I would make this recommendation or a motion that we approve it for ten people to be housed there.

I believe it is apparent here that he, and the majority of the board, did not think that 10 workers would violate the standards recited above, because they had not been violated when six migrant workers resided in the same house during the prior year. Moreover, the trial court did not reverse the board's action because the record was "silent"; it simply disagreed with the majority's conclusion. It held:

> [T]his migrant labor housing should be placed in unpopulated areas. Here you have it adjacent to a nice little country town, and the people, of course, of Painter are very proud of their town. It is a clean neat community and I certainly don't think that putting a labor camp right adjacent to the town limits facilitates that preservation. I think the Board in this case was wrong and did not follow that guideline of the Zoning Ordinance. . . .

The issue here is whether this decision is "fairly debatable." If it is, the board's decision should be affirmed, as the majority concedes. However, the majority holds that we cannot review the

board's decision because the record is "silent." I do not believe the record is "silent." On the contrary, the board rejected the Ameses' 20-worker occupancy request. This, combined with the other evidence, makes the validity of the grant of a 10-worker occupancy permit "fairly debatable."

Because this grant of a special use permit, like the denial of a special use permit in *County Board of Arlington* v. *Bratic*, 237 Va. 221, 377 S.E.2d 368 (1989), is "fairly debatable," "[u]nder such circumstances, it is not the [adjoining] property owner, or the courts, but the legislative body which has the prerogative to choose the appropriate use." *Bratic*, 237 Va. at 229, 377 S.E.2d at 372.

Accordingly, I would reverse the judgment of the trial court and enter final judgment, declaring that the Board of Zoning Appeals' grant of the use permit was not improper as a matter of law.

Alternatively, I would reverse the trial court and remand the case, with directions to remand it to the board so as to give it the opportunity to state more fully its reasons for granting the special use permit. *See, e.g., Thorpe* v. *Zoning Bd. of Review*, 492 A.2d 1236, 1237 (R.I. 1985); *Sherman* v. *Frazier*, 84 A.D.2d 401, 411, 446 N.Y.S.2d 372, 378-79 (1982); *Schenkel* v. *Allen County Planning Comm.*, 407 N.E.2d 265, 271 (Ind. App. 1980); *Eastgate Theatre, Inc.* v. *Board of County Comm'rs*, 37 Or. App. 745, 754-55, 588 P.2d 640, 645 (1978); *Vahle* v. *Zoning Bd. of Appeals of Canton*, 97 Ill. App. 2d 165, 170, 239 N.E.2d 865, 868 (1968).