## CIRCUIT COURT OF FAIRFAX COUNTY

Kenneth Campbell

v.

Fairfax County
Zoning Appeals Board et al.

November 18, 1996

Case No. L144485

BY JUDGE LESLIE M. ALDEN

This matter came before me on September 25, 1996, during a hearing on Mr. Campbell's Amended Petition for Writ of Certiorari pursuant to Va. Code § 15.1-497 (Supp. 1995). Mr. Campbell appeals the decision by the Board of Zoning Appeals (BZA) to approve a Special Permit (SUP) for the Mount Vernon Yacht Club (Club) to maintain a swimming pool and to increase the number of boat slips and acreage.[1]

On October 19, 1994, the Club filed an application for an amendment to its SUP. The Club sought an amendment to its Group 4 Special Permit in order to validate, retroactively, improvements to its facilities, which had been expanded previously without the Club having obtained the proper permit. In order to continue to qualify for the Group 4 Special Permit, the Club must satisfy a number of requirements contained in the Fairfax County ordinances. At issue in this case is whether the Club is a nonprofit organization whose membership is "limited to residents of nearby residential areas." Zoning Ord. § 8-403. If the membership in the Club does not comport with this definition, the BZA validly may not authorize a special use permit to the Club, nor may the BZA waive any of the standards prescribed in the ordinances. Zoning Ord. §§ 8-002, 8-003.

---

[1] The Club is located in the Mount Vernon area of Fairfax County on the Virginia side of the Potomac River which runs between Virginia and Maryland.

Mr. Campbell, who is a resident of Yacht Haven Estates, the subdivision immediately surrounding the Club, asserts that membership of the Club, in fact, is not limited to residents of nearby residential areas. Accordingly, he argues that the Club does not meet this requirement of the standard set forth in the zoning ordinance. As a result, Mr. Campbell contends, the BZA improperly granted the Group 4 Special Permit as requested by the Club.

The BZA maintains that the SUP was properly issued and makes two arguments in support of the position. First, the BZA argues that the opponents of the SUP did not present sufficient evidence to the BZA on the issue of the location of the members' residence to properly raise the matter for consideration by the BZA. Second, the BZA asserts that if the issue was presented properly, it was "fairly debatable," and the BZA determination must be affirmed. For the reasons that follow, the Court agrees with the BZA, and its decision to grant the SUP is affirmed.

### Standard of Judicial Review

The review of a decision of a BZA on a petition for a writ of certiorari is limited to the scope of the BZA proceeding, and the reviewing Court may only consider the correctness of the BZA's decision. The BZA's decision is presumed to be correct and can be reversed or modified only if the trial court determines that the BZA applied erroneous principles of law or was plainly wrong and in violation of the purposes and intent of the zoning ordinances. *Board of Zoning Appeals v. University Square Assoc.*, 246 Va. 290, 295 (1993). Mr. Campbell's appeal to this Court consisted solely of his amended petition for a writ of certiorari. Therefore, in this case, the issue of the members' residence must be considered in the context of the BZA's decision. That decision is presumed correct and can be reversed only if Mr. Campbell shows that it was plainly wrong or based on erroneous principles of law. *Foster v. Geller*, 248 Va. 563 (1994).

### Was the Issue Before the BZA?

During the September hearing in this Court, the BZA asserted that the issue of the Club members' residence was raised only one time, in a letter from the Commodore of the Club, which was submitted to the BZA in support of the SUP application. (Rec. P. 102).[2] However, a review of the record as a whole reveals that the issue was raised by several letters in opposition to the SUP

---

[2] Citations to the record in this case will be designated as "Rec. P. —."

request.[3] In addition, the issue was discussed, albeit in an indefinite and nonspecific way, during the public hearing on the SUP application held on July 18, 1995.[4] Although several general comments were made about the membership in the Club, no empirical data was presented to the BZA regarding the residence of each of the Club's members. Nevertheless, the issue was considered by the BZA as is evident from the record as a whole.

### Was the Issue "Fairly Debatable"?

The BZA argues that the issue of whether the membership in the Club is limited to those who live in "nearby residential areas" is one whose resolution is "fairly debatable," and therefore, the BZA is entitled to a presumption of validity. A court may not set aside a decision by a board exercising delegated legislative power unless it is "plainly wrong." *Foster v. Geller*, 248 Va. 563, 566 (1994). A "fairly debatable" action will not be deemed "plainly wrong."

Before determining whether an issue is "fairly debatable," the Court must first consider whether the petitioner has met the "burden of producing probative evidence of unreasonableness." *Ames v. Town of Painter*, 239 Va. 343, 347 (1990). In *Ames*, the Virginia Supreme Court stated that action by a board of zoning appeals is "presumed to be reasonable." 239 Va. at 347. If a petitioner attacking the decision rebuts the presumption with sufficient evidence, the board need only "produce evidence sufficient to make the question 'fairly debatable,' for the legislative act to be sustained." *Id.* If the petitioner does not rebut the presumption of reasonableness, then there is no need to question whether the issue is "fairly debatable."

I find that Campbell has not met this initial burden because he has not produced "probative evidence of unreasonableness." While it is true that the issue of the members' residence was considered by the BZA, the evidence presented by Campbell is not sufficient to show unreasonableness. The record refers generally to unidentified members who live outside the subdivision of Yacht Haven Estates, members who live as far as four (by air), fifteen, twenty,

---

[3] The authors of the letters complained in general terms about the membership in the Club; for instance, (Rec. P. 194) (members live outside the subdivision); (Rec. P. 203) (some members live as far as twenty miles away from the club); (Rec. P. 204) (35% of its boat slips are held by persons who live more than four miles (by air) from the club with members coming as far away as Maryland.); (Rec. P. 226-27) (members come from as far away as Maryland, Falls Church, and Prince William County); (Rec. P. 235) (some reside fifteen to twenty-five miles away from Yacht Haven Estates; and, (Rec. P. 241) (some who do not even live in Fairfax County or the state of Virginia).

[4] See generally Rec. P. 271-289.

or twenty-five miles away, members who live in Maryland, Falls Church, and Prince William County, and members who do not live in Fairfax County or Virginia. However, the record does not identify the juxtaposition of these locations to the club. Nor does the record show that Campbell established an appropriate definition of "nearby residential area" that was ignored by the BZA. In the absence of evidence identifying the location of the members' residence and establishing a definition of "nearby residential area," the evidence in the record is insufficient to show unreasonableness.

However, even if the evidence were sufficiently probative on the issue, the BZA has met its burden by presenting enough evidence to make the definition of "nearby residential areas" "fairly debatable." The evidence showed that the Club has about 80 members from Yacht Haven Estate, about 5 members from later additions to the subdivision, about 25 members from neighboring subdivisions, and the rest of the members from the greater community of Mount Vernon, Fairfax County, and northern Virginia.[5] Further, the record showed that the bulk of the members who do not live in Yacht Haven Estate are from other adjacent subdivisions.[6] "An issue ... is fairly debatable when, measured by both quantitative and qualitative tests, the evidence offered in support of the opposing views would lead objective and reasonable persons to reach different conclusions." *Jamerson v. Womack*, 244 Va. 506, 509 (1993); *Ames*, 239 Va. at 348.

At issue here is the meaning of "nearby residential areas" as used in the zoning ordinance. Neither the ordinance, the Virginia Code, nor case law define "nearby residential areas." As there is no established definition of "nearby residential areas," reasonable people could disagree over the meaning of the term as used in this context. Therefore, whether members reside within "nearby residential areas" is an issue which is fairly debatable. The BZA has thus satisfied its burden of proof, and the petition for certiorari is denied.

---

[5] Rec. P. 109.

[6] Rec. P. 284.