## CIRCUIT COURT OF FAIRFAX COUNTY

Carol S. Koehne

v.

Zoning Appeals Board
of Fairfax County
and Trustees of the Kings Chapel

May 22, 2003

Case No. (Law) 211070

BY JUDGE RANDY I. BELLOWS

This matter came before the Court on Friday, May 9, 2003, on Petitioner Carol S. Koehne's Motion for Reversal and Remand of the decision of the Fairfax County Board of Zoning Appeals ("BZA") in SP 2002-SP-051 and the Respondents' oppositions thereto. The Court took the matter under advisement at the conclusion of the hearing. Upon consideration of the arguments of counsel and the record in this matter, the Court denies Koehne's Motion for Reversal and Remand and dismisses the Petition for Writ of Certiorari.

## I. *Procedural Background*

This appeal arises from the application filed by the Trustees of the Kings Chapel for a Special Use Permit for a parcel of land located on Braddock Road in a Residential-Conservation ("R-C") District.

Fairfax County Zoning Ordinance § 3-C01 *et seq.* sets forth the permitted uses and special requirements applicable to a "Residential-Conservation District." The "Purpose and Intent" section of the ordinance notes that:

> The R-C District is established to protect water courses, stream valleys, marshes, forest cover in watersheds, aquifer recharge areas, rare ecological areas, and areas of natural scenic vistas; to minimize impervious surface and to protect the quality of water in public water supply watersheds; to promote open, rural areas for the growing of crops, pasturage, horticulture, dairying, floriculture, the raising of poultry and livestock, and for low density residential uses; and otherwise to implement the stated purpose and intent of this Ordinance.

FCZO § 3-C01.

The Trustees are contract purchasers of the land and plan to build church and day care facilities on the ten-acre parcel. Petitioner Koehne owns a parcel of land nearby, separated from the Kings Chapel property by another neighbor's land. The Trustees filed their application for special use permit on August 9, 2002. The Department of Planning and Zoning notified the Trustees that the application complied with FCZO § 8-011 on September 20, 2002. (FCZO § 8-011 lists the requirements for submission of applications for special permits.) Pursuant to Code § 15.2-2310, after advertising the public meeting and giving notice pursuant to Va. Code § 15.2-2204, the Fairfax County Board of Zoning Appeals held a public hearing on December 10, 2002. At the hearing, the BZA received the report of the County's zoning staff, as well as argument on behalf of the Trustees and comments from neighbors and members of the public. At the conclusion of the hearing, the BZA discussed Board Member Ms. Gibb's motion to approve the special use permit and five members of the BZA voted unanimously to approve the application. (One BZA member was absent from the meeting; another member was not present for the vote.) The Board issued its written findings and decision on December 18, 2002, and its decision became final at that time.

Petitioner Koehne timely filed her Petition for Writ of Certiorari in this Court on January 21, 2003, and this Court issued a writ of certiorari accordingly. The BZA subsequently filed its record and the parties filed briefs in accordance with the schedule established by the Calendar Control Judge.

Petitioner Koehne filed a "Motion in Limine and to Supplement the Record" on April 10, 2003, but did not set the Motion for a hearing. None of the attorneys mentioned or argued the Motion at the hearing on May 9, 2003. The relief sought in the Motion was the exclusion of the "draft minutes" filed with the return of the record and of any other, subsequently filed, approved minutes, as well as the supplementation of the record with an extract from a 2001 Fairfax County Stream Protection Strategy Baseline Study. The Court has not ruled on the Motion. In any case, the Court, in reaching the instant decision, relies upon the verbatim transcript of the public hearing before the BZA. Additionally, the Court declines to supplement the record with the extract of the stream protection study filed with Petitioner's Motion because there is no evidence in the record that the study was before the BZA at the time of its decision.

## II. *Applicable Zoning Law*

The General Assembly created boards of zoning appeals and empowered them to perform specific functions, including "to hear and decide applications for special exceptions as may be authorized in the ordinance." Va. Code § 15.2-2309(6). Section 8-001 of the Fairfax County Zoning Ordinance (hereinafter cited as "FCZO") states as follows:

> There are certain uses, like those regulated by special exception, which, by their nature, can have an undue impact upon or be incompatible with other uses of land. These uses as described may be allowed to locate within given designated zoning districts under the controls, limitations, and regulations of a special permit.
> The BZA may approve a special permit under the provisions of this Article, when it is concluded that the proposed use complies

---

[1] This Court did not consider Petitioner's first Memorandum in support of her Motion to Reverse and Remand but considered her replacement Memorandum filed in accordance with the Court's letter of April 14, 2003.

with all specified standards and that such use will be compatible with existing or planned development in the general area. In addition, in approving a special permit, the BZA may stipulate such conditions and restrictions, including, but not limited to, those specifically contained herein, to ensure that the use will be compatible with the neighborhood in which it is proposed to be located. Where such cannot be accomplished, or it is determined that the use is not in accordance with all applicable standards of this Ordinance, the BZA shall deny the special permit.

FCZO § 8-001. The FCZO further sets forth "General Standards" in § 8-006, as follows:

In addition to the specific standards set forth hereinafter with regard to particular special permit uses, all special permit uses shall satisfy the following general standards:

1. The proposed use at the specified location shall be in harmony with the adopted comprehensive plan.
2. The proposed use shall be in harmony with the general purpose and intent of the applicable zoning district regulations.
3. The proposed use shall be such that it will be harmonious with and will not adversely affect the use or development of neighboring properties in accordance with the applicable zoning district regulations and the adopted comprehensive plan. The location, size, and height of buildings, structures, walls, and fences, and the nature and extent of screening, buffering, and landscaping shall be such that the use will not hinder or discourage the appropriate development and use of adjacent or nearby land and/or buildings or impair the value thereof.
4. The proposed use shall be such that pedestrian and vehicular traffic associated with such use will not be hazardous or conflict with the existing and anticipated traffic in the neighborhood.

---

[2] Va. Code §§ 15.2-2232 et seq. provide for the development and adoption of "a comprehensive plan for the physical development of the territory within [each] jurisdiction." Va. Code § 15.2-2233.

5. In addition to the standards which may be set forth in this Article for a particular group or use, the BZA shall require landscaping and screening in accordance with the provisions of Article 13.

6. Open space shall be provided in an amount equivalent to that specified for the zoning district in which the proposed use is located.

7. Adequate utility, drainage, parking, loading, and other necessary facilities to serve the proposed use shall be provided. Parking and loading requirements shall be in accordance with the provisions of Article 11.

8. Signs shall be regulated by the provisions of Article 12; however, the BZA, under the authority presented in Sect. 007 below, may impose more strict requirements for a given use than those set forth in this Ordinance.

FCZO § 8-006.

The specific standards applicable to special permit uses in R-C districts are found in FCZO §§ 8-301 *et seq*. The Zoning Ordinance classifies "churches, chapels, temples, synagogues, and other such places of worship with a child care center, nursery school, or private school . . ." as "Group 3 special permit uses," and provides that such places of worship "may be allowed by special permit in ... R-C Districts." FCZO §§ 8-301, 8-302. All Group 3 uses must comply with FCZO § 8-303 as follows:

In addition to the general standards set forth in Sect. 006 above, all Group 3 special permit uses shall satisfy the following standards:

1. Except as may be qualified in the following Sections, all uses shall comply with the lot size and bulk regulations of the zoning district in which located. . . .

2. All uses shall comply with the performance standards specified for the zoning district in which located.

3. Before establishment, all uses, including modifications or alterations to existing uses ... shall be subject to the provisions of Article 17, Site Plans.

FCZO § 8-303.

The BZA, in reviewing the special permit application filed by the Trustees of the Kings Chapel, was obligated to "conclude[] that the proposed use complies with all specified standards and that such use will be compatible with existing or planned development in the general area" before approving the special permit. FCZO § 8-001. Further, "the BZA shall have no authority to vary, modify, or waive any of the regulations or standards prescribed for any use for which a special permit is required. … The BZA's discretion shall be limited to determinations with respect to the standards applying to the use covered by the application." FCZO § 8-003. The Zoning Ordinance further provides that:

> The jurisdiction of the BZA with respect to any use or purpose for which the BZA is authorized to approve special permits shall be confined to the consideration of the question of conformity to the provisions of this Ordinance. On an affirmative finding with respect to conformity, the BZA may approve the special permit applied for subject to whatever conditions and restrictions are deemed necessary under the provisions of Sect. 007 below.

*Id.* The BZA's authority is also limited by the provisions of Virginia Code § 15.2-2309, which provides in part that "no provision of this section shall be construed as granting any board the power to rezone property or to base board decisions on the merits of the purpose and intent of local ordinances duly adopted by the governing body." Va. Code § 15.2-2309(5).

III. *Standard of Review*

This Court, in reviewing the BZA's decision to approve the special permit, must adhere to the standards of review set forth by the Supreme Court of Virginia. In *Ames v. Town of Painter*, 239 Va. 343, 389 S.E.2d 702 (1990), the Supreme Court set forth the standard governing circuit courts when reviewing legislative determinations of a BZA:

> In *County Board of Arlington v. Bratic*, 237 Va. 221, 377 S.E.2d 368 (1989), we recently restated the principles of law governing the standards of judicial review which govern use-permit cases, which are the same as those governing judicial

review of zoning enactments. A board of zoning appeals, acting under a delegated power to grant or refuse special exceptions and special use permits, acts in a legislative capacity. Therefore, its action is presumed to be reasonable. The presumption is rebuttable, but it stands until surmounted by evidence of unreasonableness. The litigant attacking the legislative act has the burden of producing probative evidence of unreasonableness. If he produces such probative evidence, the legislative act cannot be sustained unless the governing body (or in cases of this kind, the Board of Zoning Appeals) meets the challenge with some evidence of reasonableness. The governing body is not required to go forward with evidence sufficient to persuade the fact-finder of reasonableness by a preponderance of the evidence. It must only produce evidence sufficient to make the question "fairly debatable," for the legislative act to be sustained. An issue may be said to be fairly debatable when, measured by both quantitative and qualitative tests, the evidence offered in support of the opposing views would lead objective and reasonable persons to reach different conclusions.

*Id.* at 347-348 (some internal quotation marks and citations omitted). The *Ames* Court went on to state that:

Judicial review of legislative acts must be approached with particular circumspection because of the principle of separation of powers, embedded in the Constitution. That principle precludes judicial inquiry into the motives of legislative bodies elected by the people. Where the courts are called upon to review the acts of officials, agencies, and boards exercising delegated legislative powers, the inquiry must ordinarily be whether the official, agency, or board has acted arbitrarily or capriciously, or rather, whether it has acted in accordance with the standards specified in the legislative delegation of power.

*Id.* at 349 (internal citations omitted).

Thus, this Court, taking care not to substitute its judgment for the legislative judgment of the BZA, must presume that the BZA's action in this case was reasonable and Petitioner Koehne bears the burden of presenting

"probative evidence" that the BZA's action was unreasonable. If she presents sufficient evidence of unreasonableness, the BZA must produce sufficient evidence of reasonableness to make the issue fairly debatable. Otherwise, the BZA's decision cannot be sustained by this Court. If, however, the BZA presents sufficient evidence of reasonableness for this Court to conclude that the issue is fairly debatable, the Court must sustain its action in granting the special use permit to the Trustees of Kings Chapel.

## IV. *Petitioner's Evidence of Unreasonableness of the BZA's Action*

Petitioner cites cases such as *Ames v. Town of Painter*, 239 Va. 343, 389 S.E.2d 702 (1990), and *Toone v. Board of Zoning Appeals*, 54 Va. Cir. 33 (Fairfax 2000), in support of her argument that "if the record contains no evidence regarding one of the purposes of a zoning ordinance, the Petitioner immediately satisfies her burden and the Court must find the BZA cannot carry its burden of evidence." Those cases, however, did not so hold with respect to findings regarding the "purposes of a zoning ordinance." Instead, those cases require BZAs to make "a sufficient record ... to enable the reviewing court to make an objective determination whether the issue is 'fairly debatable'." *Ames*, 239 Va. at 348. In *Ames*, the Supreme Court found that the record before the trial court was "silent with respect to the Board's adherence to a legislatively-prescribed standard." The Court noted that:

> [s]ome or all of the members of the Board, in reaching their individual decisions, may have considered those factors in good faith, but with the exception of the statements of the member who moved a denial of the application on those grounds, there is no basis in the record for an objective conclusion by the reviewing court that the legislative standards had been given any consideration.
>
> We hold that the "fairly debatable" standard cannot be established by a silent record. Unless the Board makes appropriate findings, supported by the record, or states appropriate conclusions supported by the record, or unless the record itself, taken as a whole, suffices to render the issue fairly debatable, probative evidence of unreasonableness adduced by a litigant attacking the Board's action will be deemed unrefuted.

*Id.* at 350. The record in *Toone* similarly was devoid of findings in support of the BZA's decision. The Court found that "no findings or conclusions were articulated by any member of the Board concerning any aspect of Toone's claim that the Notice of Violation at issue was contrary to Toone's lawful nonconforming use of the Subject Property. ... No findings were included in the written notification [of the BZA's decision]." Toone, 54 Va. Cir. 33 at pp. 35-36.

In this case, by contrast, the BZA articulated its findings at the hearing and in its written decision. R. at 176-78, 150-55. Thus, this is not a matter of a completely silent record with respect to the issue of whether the special permit application complied with all requirements of the FCZO. Petitioner urges this Court, however, to find that "because Section 8-006 requires special permits to be in harmony with the 'purpose and intent' of the ordinance and with the [Comprehensive Plan], the application must be in harmony with *each* element of the ordinance's statement of purpose and intent and each relevant element of the Comprehensive Plan." P. Mem. at 1 (emphasis in original). Petitioner has not cited any statute, ordinance, or case imposing such a requirement on the BZA. Indeed, she has not cited any authority for the proposition that the phrases within the "purpose and intent" section of the FCZO have been elevated to the status of "elements" to be satisfied. Nor has she cited any persuasive authority for the proposition that "the BZA must place into the record a statement as to the principles it used to determine the credibility of the conflicting evidence and then apply the principles and specify in the record which evidence is more credible." Petitioner refers to this Court's decision in *Toone, supra,* in support of the foregoing proposition. In the *Toone* case, however, this Court found that:

> the record from the BZA is devoid of any findings concerning the BZA's determination of the credibility of the conflicting evidence on the lawful nonconforming use issue or the principles utilized by the BZA in deciding this issue. In fact, it is not clear from the record that the BZA ever decided this issue.

*Toone,* 54 Va. Cir. 33 at p. 42. The BZA's decision in *Toone* made no reference whatsoever to the nonconforming use issue. Further, the *Toone* case was an appeal from the BZA's upholding of a notice of zoning violation issued by the Zoning Administrator, rather than a review of a legislative action by the BZA. This Court reiterated the requirements for the record to be submitted by the BZA as follows:

> Although no written findings or conclusions must necessarily be made, the record submitted to the circuit court in all appeals from the board of zoning appeals must contain sufficient findings or conclusions supporting the board's decision on the arguments presented to it to allow the circuit court to properly adjudicate, and [the Supreme Court to] properly review the issues on appeal. As the record from the BZA does not contain the necessary findings or conclusions on the lawful nonconforming use issue, this Court must reverse the BZA decision, in part.

*Id.* at p. 43 (internal citation and quotation marks omitted). The *Toone* court did not impose new requirements on the BZA that it "must place into the record a statement as to the principles it used to determine the credibility of the conflicting evidence and then apply the principles and specify in the record which evidence is more credible," as the Petitioner argues. Instead, the court in *Toone* merely noted the absence of any findings or conclusions by the BZA. This Court declines to impose a more stringent record-making requirement on the BZA than the requirements already imposed by law and noted by the *Toone* court, namely, that "the record ... must contain sufficient findings or conclusions supporting the board's decision on the arguments presented to it to allow the circuit court to properly adjudicate ... the issues on appeal." *Toone* at 43. Thus, this Court declines to require the BZA to make specific findings on the record, including a statement regarding the principles used to determine the credibility of each piece of conflicting evidence and which individual pieces of evidence it finds to be credible, with respect to each and every phrase contained in the "purpose and intent" section of the FCZO as well as the "thirteen policies of the Comprehensive Plan's Policy Plan, Environment Chapter" addressed by Petitioner.

The Court finds that the Petitioner has failed to present persuasive evidence that the Board acted unreasonably in approving the special use permit in this case. Petitioner's arguments regarding unreasonableness all derive from her contention that the BZA failed to receive evidence or failed to resolve conflicts in the evidence or failed to address numerous "conservation purposes" of the ordinance establishing R-C districts, as well as numerous "conservation objectives of the Comprehensive Plan." This contention stems from FCZO § 8-006's requirements that "the proposed use at the specified

location shall be in harmony with the adopted comprehensive plan," and "the proposed use shall be in harmony with the general purpose and intent of the applicable zoning district regulations." This Court declines to require the BZA to make specific findings with respect to each and every clause of the "purpose and intent" section of the R-C ordinance and each potentially relevant clause of the Comprehensive Plan. As noted above, Petitioner has not cited and this Court is unaware of any authority elevating the general "purposes" or "intent" of the ordinance or plan sections to independent elements, each of which must be satisfied by undisputed evidence or a BZA determination on the record of the persuasiveness of conflicting evidence before the BZA may approve a special permit.

## V. Evidence of Reasonableness of the BZA's Approval of the Special Permit Application

Even if this Court were to find that Petitioner had presented adequate evidence of unreasonableness of the BZA's decision, the Court concludes that the Board has rebutted any such evidence with its own evidence of reasonableness, sufficient to make the issues before this Court fairly debatable. The subparts of FCZO § 8-006 arguably placed before this Court by Petitioner's Motion and Memorandum are the first three subsections. The BZA's Resolution in this case indicates that it "reached the following conclusions of law: That the applicant has presented testimony indicating compliance with the general standards for Special Permit Uses as set forth in Sect. 8-006 and the additional standards for this use as contained in Sect(s). 3-C03 of the Zoning Ordinance." R. at 151. The Court will address each of the subsections of § 8-006 at issue in turn.

The first requirement of FCZO § 8-006, which sets forth the "General Standards" applicable to special use permit applications, is that "the proposed use at the specified location shall be in harmony with the adopted comprehensive plan." The report submitted to the BZA by the County's zoning staff indicates that "all applicable standards have been satisfied with the proposed development conditions," each of which was imposed by the BZA on the Trustees. The staff report further states that "Staff concludes that the subject application is in harmony with the Comprehensive Plan and in conformance with the applicable Zoning Ordinance provisions with the implementation of the Proposed Development Conditions contained in Appendix 1 of the Staff Report." R. at 73. The staff report also contains

"checklists" indicating that the zoning staff found that the application complied with all general standards in FCZO § 8-006 as well as the "Group 3" standards set forth in § 8-303. R. at 109. Additionally, the staff report noted the applicant's "statement of justification," which states the following with respect to subsection 1 of § 8-006:

> Church and child care/nursery school facilities are appropriate uses for planned residential areas, especially when located upon a planned arterial roadway such as Braddock Road. The size and scale of the proposed facilities are consistent with the low density character of the area, as well as with other churches and child care centers along this portion of Braddock Road. Undisturbed open space approximating 50% of the site will be provided.

R. at 91. The Staff Report also includes a "Land Use Assessment" which discusses the area in question and analyzes the proposed development plans. Although the assessment notes a concern that applicants may not have "demonstrated an appropriate level of sensitivity to the development['[]s location within the Occoquan watershed as is required to special permit uses in this area" the assessment states that "the proposed church and child care center are generally in keeping with the recommendation of the Comprehensive Plan." R. at 97. The Court finds that the staff report and the record as a whole provide an adequate basis for the BZA's conclusion that the proposed use is "in harmony with the adopted comprehensive plan." Thus, the BZA has presented evidence of the reasonableness of its decision sufficient to make the issue of compliance with subsection 1 of FCZO § 8-006 fairly debatable.

Subsection 2 of § 8-006 requires the following: "The proposed use shall be in harmony with the general purpose and intent of the applicable zoning district regulations." The parcel of land at issue is located within an R-C district. The "purpose and intent" section of the R-C district regulations states as follows:

> The R-C District is established to protect water courses, stream valleys, marshes, forest cover in watersheds, aquifer recharge areas, rare ecological areas, and areas of natural scenic vistas; to minimize impervious surface and to protect the quality of water in public water supply watersheds; to promote open, rural areas

for the growing of crops, pasturage, horticulture, dairying, floriculture, the raising of poultry and livestock, and for low density residential uses; and otherwise to implement the stated purpose and intent of this Ordinance.

FCZO § 3-C01. Part C of the Residential District Regulations goes on to enumerate the "Permitted Uses" (by right), uses permitted by special permit, and special exception uses allowed in the R-C District. FCZO §§ 3-C05 through 3-C10 set forth the limitations, lot size, density, and open space requirements, and other regulations applicable to the R-C District. In addition to the zoning staff's opinion, based on its assessment of the application, that the application was "in harmony with the general purpose and intent" of the R-C District regulations, the BZA also had before it various sections of the staff report addressing the issue of whether there was a water course or wetland on the property and suggesting development conditions to protect any such wetlands. The BZA also implemented the zoning staff's proposal to require that at least 50% of the ten acres at issue be left undisturbed, thus further requiring compliance with the stated general purpose and intent of the R-C district. Further, the BZA imposed a condition that the Fairfax County Department of Public Works and Environmental Services conduct and submit a wetland study before the site plan may be approved. The Court finds that the BZA has produced sufficient evidence in the record to make its conclusion that the proposed church and day care center is "in harmony with the general purpose and intent" of the R-C district regulations fairly debatable.

Petitioner also arguably placed the third subsection of FCZO § 8-006 into issue in this appeal by arguing that the proposed facilities would harm her ability to build a home on the land she owns. That subsection states as follows:

> The proposed use shall be such that it will be harmonious with and will not adversely affect the use or development of neighboring properties in accordance with the applicable zoning district regulations and the adopted comprehensive plan. The location, size, and height of buildings, structures, walls, and fences, and the nature and extent of screening, buffering, and landscaping shall be such that the use will not hinder or discourage the appropriate development and use of adjacent or nearby land and/or buildings or impair the value thereof.

FCZO § 8-006. In addition to the zoning staff's finding that the application complied with this subsection, the Board also had before it sufficient evidence to make its decision on this point fairly debatable. The Board considered fencing and vegetation buffers for the properties adjoining the Trustees' land and imposed vegetation screening requirements (R. at 153), limitations on lighting (R. at 154), and a requirement for a fence along one side of the property (R. at 154). Additionally, the BZA had before it the following statement of counsel for the Trustees at the hearing:

> There are a number of drainage and water protection issues. BMPs [best management practices] will be provided for this property. Let me ... direct your attention to a graphic to answer Mr. Hart's question. If you look at this map, you'll see there's really the ephemeral stream, which goes through the subject property and drains immediately to the south. That collects approximately 38 acres. That's the ephemeral stream. The real stream, the real environmentally sensitive area under Chesapeake Bay is further to the south. That drains 190 acres. Our drainage goes immediately to the south to the Dayharsh's property. We've met with the Dayharshes on site with our engineer. As you are aware, County Ordinances require that our after-development flow be equal to the current situation, the pre-development flow. We have committed to them to go beyond that in a letter, which I will enter into the record to where we will reduce the current flow onto their property from this ephemeral stream. We've talked to DPW&ES about this. They feel that our dry pond storm water management will provide BMPs, will be able to reduce the current flow onto the Dayharsh property, and, as you notice, it continues through the Dayharsh property down to the stream. So we are improving that situation, both in terms of water quality because of BMPs and in terms of volume of storm water and erosion; we are reducing it.

R. at 166. Thus, the BZA had before it various pieces of evidence regarding the proposed project's impact on the surrounding properties. That evidence serves as the BZA's rebuttal to any case Petitioner may have made that its action was unreasonable, and this Court will not disturb the BZA's finding that "the proposed use ... will be harmonious with and will not adversely

affect the use or development of neighboring properties in accordance with the applicable zoning district regulations and the adopted comprehensive plan."

## VI. *Conclusion*

Thus, this Court finds that Petitioner has not produced probative evidence of unreasonableness sufficient to rebut the presumption of reasonableness afforded to the BZA's legislative act of approving the Trustees of the Kings Chapel's special permit application. Alternatively, even if the Petitioner had produced such evidence of unreasonableness, there is ample evidence in the record to make the issues on appeal fairly debatable, and this Court must accordingly uphold the BZA's decision. The Court finds that the action of the BZA was neither arbitrary nor capricious. Therefore, The Court denies Petitioner's Motion to Reverse and Remand and dismisses the Petition for Writ of Certiorari.